*515 OPINION OF THE COURT
Geoffrey J. O’Connell, J.
Trial of this wrongful death action resulted in a verdict for itemized damages of $25,500 which included voluntary support of two adult children of $21,000 and funeral expenses of $4,500. The jury also found that the decedent’s estate would have been augmented by $1,284,600 had she lived the additional 28.8 years it found she would have lived had she not been struck by defendant’s motor vehicle. (See, 1 Speiser-Krause-Madole, Recovery for Wrongful Death and Injury § 3:32 [3d ed].) The issue confronting this court is the application of CPLR article 50-B, a task described by even the Court of Appeals as “ ‘ “every Judge’s nightmare” ’ ” (Bryant v New York City Health & Hosps. Corp., 93 NY2d 592, 600; Bermeo v Atakent, 241 AD2d 235, 242; Rohring v City of Niagara Falls, 153 Misc 2d 1001, 1002, mod 192 AD2d 228, affd as mod 84 NY2d 60). This already daunting task is made more complex because the distributees are all adults and only two were receiving voluntary support from the deceased.
Decedent Carol Coyne left a husband, three adult natural children from a prior marriage and an adult adopted child. Decedent’s will divided her estate among her children and made no bequest to Jerome Garfunkel, her husband. Mr. Garfunkel, however, held a statutory right of election to one third of the estate. Mr. Garfunkel also had a claim to participate in any recovery from a wrongful death action by virtue of his status as a “distributee” as determined at the time of Carol Coyne’s death by reference to the laws governing intestate descent and distribution (Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 5-4.4, at 550 [1981]). The adult children, whether or not actually receiving financial support, were also entitled to participate in the wrongful death action recovery by virtue of their status as distributees (Matter of Duffy, 208 AD2d 1169 [3d Dept 1994]). Carol Coyne’s four children entered into an agreement with Mr. Garfunkel pursuant to which they gave him full control of the wrongful death action including the right to receive the entire recovery in return for his waiver of his one-third interest in the estate.
Not surprisingly, the relationship between Mr. Garfunkel and at least the three natural Coyne children became acrimonious. While testifying during the first trial of the wrongful death action, Peter Coyne, spontaneously accused Jerome Garfunkel of marital infidelity in front of the jury resulting in a mistrial. *516 Upon reassignment and before commencing the second trial, plaintiff applied for a ruling in limine to prevent the defense from making the jury aware of the agreement between Jerome Garfunkel and the Coyne children. This court ruled that the agreement would only be relevant for impeachment purposes if Jerome Garfunkel gave testimony about the relationship between the decedent and her children. Jerome Garfunkel gave no such testimony and accordingly the jury never learned of the agreement. However, the agreement rendered moot the question of how any recovery in the wrongful death action would be divided among the distributees. (EPTL 5-4.4.)
The pattern jury instruction (PJI 2:320) provides for an itemized verdict in a wrongful death action in which the first question is: “State the total amount of economic loss, if any, to each of (list the distributees by name) resulting from AB’s death.” The second question on the questionnaire is: “For each person for whom an award is made in your answer to Question No. 1, state the period of years over which the amount awarded for such economic losses is intended to provide compensation.” In the instant case, however, Jeanne Song, the adopted daughter, had become estranged from the other family members and did not testify. Robert Coyne, the eldest son, was married with children when his mother died. He testified that he received neither services nor support from the decedent. Only the two younger natural children, Julie and Peter, testified that they received services and support from their mother. Accordingly, the two PJI questions were combined into a single question asking for the pecuniary loss and the period it was intended to cover suffered by Julie, Peter and Jerome Garfunkel. The jury found that Julie suffered a $15,000 loss over a five-year period; that Peter suffered a $6,000 loss over a two-year period and that Jerome Garfunkel suffered no pecuniary loss.
Based on the uncontradicted trial testimony the only losses suffered by Jeanne Song and Robert Coyne was the diminution of their inheritance, a circumstance in which Jerome Garfunkel came to share as a result of the jury’s answer to the first damage question (see, Johnson v Long Is. R. R., 80 Hun 306, 30 NYS 318, affd 144 NY 719). Throughout the trial, the court was undecided whether an award for lost enhancement of a decedent’s estate constituted past or future damages under CPLR article 50-B. To preserve this issue for further consideration a separate question was posed to the jury: “State the amount awarded to compensate for the extent to which, if any, the estate of Carol Coyne Garfunkel would have been enhanced *517 from her earnings had she not died on July 1, 1994. In answering this question you are also to determine the life expectancy of Carol Coyne Garfunkel on July 1, 1994.” The jury found that the estate would have been enhanced by $1,284,600 had Carol Coyne lived the additional 28.8 years which was her reasonable life expectancy. The jury had heard testimony from Dr. Conrad Berenson, an economist, who projected the decedent’s earnings over her future working life based on a teachers’ contract in effect at the time of her death. He offered testimony as to projections based on certain assumptions with respect to wage and cost of living increases. Dr. Berenson also projected retirement income and personal consumption. It is the award made in response to this question and based on Dr. Berenson’s testimony which is the core of the current dispute.
CPLR 5041 (e) creates a mandatory structured judgment for certain personal injury verdict awards in excess of $250,000. According to its terms, it applies to, “awards of future damages” (CPLR 5041 [e] [emphasis supplied]), but the term “future damages” is given no statutory definition. Plaintiff contends that the jury’s determination that Carol Coyne’s estate would have been enhanced by $1,284,600 had she lived an additional 28.8 years was an award of “future damages.” Applying CPLR 5041, plaintiff’s expert economist, Dr. Berenson, determined that the judgment which should be entered on this award had a present value as follows:
$ 39,978.00 Litigation expenses pro rated to the $1,284,600 award
250,000.00 Lump sum pursuant to CPLR 5041 (b)
276.823.00 Attorneys fee on the future periodic payments
553.646.00 Present value of CPLR 5041 (e) annuity (1st payment $23,023)
$ 1,120,447.00 Total present value of award
In response to an inquiry by the court, Dr. Berenson testified that the present value of the right to receive $1,284,600 in 28.8 years calculated without application of CPLR 5041 is $298,342. For all of his present value calculations Dr. Berenson used a discount rate of 5.2% which he arrived at by determining the weighted average interest rate paid on United States Treasury bills reported in the New York Times for Monday, January 25, 1999, the date of the jury’s verdict.
Leonard Freifelder, defendants’ economist, offered the court four alternative methods of determining the judgment to be *518 entered. The first alternative corresponded to Dr. Berenson’s response to the court’s inquiry as to the present value of the right to receive $1,284,600 in 28.8 years. The fact that Mr. Freifelder’s calculation yielded a present value of $305,509 is attributable to two elements of the calculation upon which the economists differed. Mr. Freifelder used a life expectancy figure of 23.8 rather than the jury figure of 28.8 because he subtracted the five years which had elapsed between the date of Carol Coyne’s death and the date of the hearing. He used a discount rate of 6.25% based on Treasury securities maturing in 2023 (Carol Coyne’s projected year of death) as reported in the Wall Street Journal on July 29, 1999, the date upon which his report was prepared. The effect of the shorter life expectancy figure increases the present value while the use of the larger discount rate decreases it. Following the hearing, defendants submitted a recalculation by Mr. Freifelder utilizing a discount rate of 5.39% which was the interest rate on Treasury securities maturing in February of 2023 as reported in the New York Times of January 25, 1999 (the date of verdict) which plaintiff had admitted into evidence. This recalculation yielded the present value of the right to receive $1,284,600 in February of 2023 as being $370,374.
CPLR article 50-B was enacted to alleviate a crisis caused by “skyrocketing [insurance] premiums and reductions in coverage” much as its model, CPLR article 50-A, had been intended to alleviate a crisis in health care occasioned by “[e]scalating malpractice insurance premiums.” (Compare, L 1986, ch 220, § 1, with L 1985, ch 294, § 1; see, Bermeo v Atakent, 241 AD2d 235, 241 [2d Dept 1998], supra.) To effectuate a reduction of costs, both enactments mandate structured judgments. Some savings derive from the fact that the periodic payments for future health care expenses and noneconomic loss (pain and suffering) terminate upon the death of the successful plaintiff now judgment creditor. Periodic payments for future lost earnings, however, survive for the benefit of such person or persons to whom the successful plaintiff/judgment creditor owed a duty of support (CPLR 5045 [b]).
While pursuant to CPLR 5041, article 50-B is applicable to both personal injury actions and wrongful death actions, the recoveries available in these two types of actions differ. For example, in Doe v State of New York (155 Misc 2d 286, mod 189 AD2d 199 [4th Dept 1993]), plaintiff brought a personal *519 injury action against the State based upon her contracting AIDS after being punctured by a contaminated needle while providing nursing care to a prison inmate. The trial court ruled that any recovery for lost earnings should be limited to the period of plaintiffs life expectancy as reduced by her illness. It suggested that upon her premature death her distributees would be able to bring a wrongful death action in which they could recover their loss of parental support augmented by such additional considerations as loss of nurture and guidance citing PJI 3:329 (Doe v State of New York, supra, at 302). The Appellate Division disagreed, however (supra, at 206-207):
“The Court of Claims erred in limiting Jane Doe’s future economic loss to her postinjury life expectancy (see, Restatement [Second] of Torts § 924, comment c, at 524-526). Only an award based on one’s preinjury life expectancy truly reflects the injured party’s actual loss (7A Warren’s, New York Negligence, Personal Injuries, § 7.04 [1], at 416-417 [4th ed 1984]). To hold otherwise would in effect reward defendant for having successfully injured Jane Doe severely enough to shorten her life span (Rummo v Celotex Corp., 726 F Supp 426, 428 [ED NY 1989]). Thus, we conclude that, where the proof in the record permits the loss to be ascertained with reasonable certainty (see, Askey v Occidental Chem. Corp., 102 AD2d 130, 136), damages attributable to an injured person’s lost earning capacity due to injury must be awarded directly to that person during his or her lifetime utilizing the preinjury life expectancy. That rule must apply in those situations where, as here, an actual shortened life expectancy can be determined prior to death (see, Rummo v Celotex Corp., supra, at 428-429).
“The court’s determination that Jane Doe’s distributees could be compensated for any such loss by bringing a wrongful death action was erroneous. It is axiomatic that her distributees could maintain an action for wrongful death only if she had a right of recovery for personal injuries at the time of her death (see, EPTL 5-4.1; Fontheim v Third Ave. Ry. Co., 257 App Div 147, 149, appeal dismissed 289 NY 624) * * * The fact that the elements and amounts of recovery could be different if determined under EPTL 5-4.1 and 11-3.3. is irrelevant.”
The Appellate Division determined that Jane Doe, who was 42 years of age as of the trial, was entitled to recover for earnings lost over the period of her worklife without AIDS or through age 58. However, the Appellate Division also ruled that for purposes of the CPLR 5041 (e) calculation the payout period would be Jane Doe’s aftertrial and with AIDS life expectancy of *520 5.5 years and not her 16-year worklife expectancy without AIDS.
By parity of reasoning, if it was held that Jane Doe would sustain, during her reduced 5.5-year life expectancy, the loss of the reasonable expectation of an additional 10.5 years of earnings, then those of Carol Coyne’s distributees who suffered only the loss of their reasonable expectation of an inheritance enhanced-over her life expectancy but for the accident suffered their loss either at the time of her death or when her estate was distributed. Robert Coyne, Jeanne Song and Jerome Garfunkel were not deprived of their right to share in a stream of income, but only of the additional single lump-sum payment which they would have received as distributees of the estate had Carol Coyne survived to augment her estate. This loss had already been sustained prior to trial and was past damages even though it was to be measured by a projection of unrealized future events.
The situation is different with respect to distributees who were receiving support from the decedent at the time of her death. Were they minor children, the loss of the lump sum by which their inheritance would have been enhanced would be but one component of the damages they were entitled to recover and a relatively minor one. A major component would be their loss of a share in that stream of income which the decedent would have received as earnings and used, in part, for their support. To the extent that this jury determined that Julie Coyne would have received support into the future and beyond the date of trial, it awarded future damages. However, the two-year period during which the jury found Carol Coyne would have continued to support Peter Coyne had expired well before trial and was an award of past damages. Even the five-year period over which the jury found that Julie Coyne would have continued to receive voluntary assistance had less than six months outstanding as of the date of the award. CPLR 5041 (e) would not, according to its terms, have an application to a future award for so limited a period.
What then is to be done with the jury’s award of $1,284,600? It is clear, and the arguments of both sides implicitly acknowledge, that the jury’s award represents their determination of the value of the enhancement of Carol Coyne’s estate at the end of a 28.8-year life expectancy which they found appropriate. The court’s charge included the language mandated by CPLR 4111 (f) instructing the jury to award the full amount of damages without reduction to present value to which no objec *521 tion was made. Indeed, the charge and verdict sheet were structured so as to obtain a future value and to leave open for future consideration the possible application of CPLR 5041 (e).
CPLR 5041 (e) does furnish a method for determining present value of future damages utilizing the discount rate in effect at the time of the award and the period of time fixed by the jury. Plaintiffs economist utilized a 5.2% discount rate determined by averaging the rates of return available on January 25, 1999, on Treasury securities maturing at various times during the period over which he assumed the award would be paid out in installments. Defendants’ economist, in his revised calculations, used a 5.39% discount rate based on the rate of return available on January 25, 1999, on Treasury securities maturing in February of 2023 or 28.8 years after the accident. However, the court has found that, as to all of the distributees except Julie Coyne, the loss of inheritance award is past damages to which CPLR 5041 (e) is inapplicable. It would appear to be more appropriate to calculate the value of the award as of the date of death to which would then be added interest at the statutory rate of 9% (CPLR 5004) from date of death (EPTL 5-4.3). To award statutory interest from the date of death on an award reduced only to the day of award would be equivalent to awarding a double recovery of interest, i.e., both discount rate interest and statutory rate interest during the period between the date of death and the date of the award.
Plaintiff has argued that Bryant v New York City Health & Hosps. Corp. (93 NY2d 592) has application to this case. In Bryant, the Court of Appeals held that in calculating the present value of an award under article 50-B for the purposes of determining installment payments and the attorney’s fee, the calculation should include the 4% additur provided for in the sixth sentence of CPLR 5041 (e). It reasoned that: “Reduction of the jury’s future damages award to present value, and then payment of that already discounted award in future installments over time * * * does not assure recovery of the ‘full amount’ of future damages.” (Bryant v New York City Health & Hosps. Corp., supra, at 603.) Here, however, it has been determined that the award is to be paid in a present value lump sum so that the 4% if applied, would serve no function.
The court finds that the appropriate discount rate is the 5.39% rate payable on Treasury securities maturing in Febru *522 ary of 2023.[1] (See, Bermeo v Atakent, 241 AD2d 235, 245 [1st Dept 1998], supra; Caruso v LeFrois Bldrs., 217 AD2d 256, 260 [3d Dept 1995]; Binghamton Masonic Temple v City of Binghamton, 158 Misc 2d 916 [Sup Ct, Broome County 1993].) Judgment may be entered for the $15,000 awarded for Julie Coyne, the $6,000 awarded for Peter Coyne and the $4,500 awarded for funeral expenses, all with statutory interest from the date of death. Judgment may also be entered for the value of the right to receive $1,284,600 in February of 2023 reduced to its value as of the date of death, or July 1, 1994, utilizing the 5.39% discount rate[2] and with statutory interest from the same date.
If the parties are unable to stipulate as to the value of the right to receive $1,284,600 in February of 2023 reduced to its value as of the date of death calculated in accordance with this decision, then they shall, within 30 days of the date hereof, submit to the court their respective calculations of the value of the right to receive $1,284,600 in February of 2023 reduced to its value on July 1, 1994 utilizing a 5.39% discount rate.

. The rate of return on such securities on the date of death might also be appropriate, but no evidence was adduced about that rate and CPLR 5041 (e) mandates use of the date of award rate at least as with respect to the award on behalf of Julie Coyne.

. This sum should be slightly less than the $298,342 present value of the right to receive $1,284,600 in 28.8 years calculated by Dr. Berenson at the court’s request using a 5.2% discount rate. Application of the 9% statutory interest rate would grow Dr. Berenson’s $298,342 to $459,036 on July 1, 1999.