William L. CAMPBELL, as the Administrator of the Estate of Charles Campbell and the Guardian of Vaughn Campbell, an Infant, Plaintiff,

v.

Richard D. DIGUGLIELMO, Individually and in his Official Capacity as a New York City Police Officer; Richard B. Diguglielmo; Robert Errico; Mimie–Di Scat Corp.; Rosemarie Deli, Inc. d/b/a Venice Deli & Grocery; City of New York, Defendants.

No. 97 Civ. 7351(CBM).

United States District Court, S.D. New York.

June 18, 2001.

Terrence E. McCartney, Rheingold, Valet & Rheingold, P.C., New York, NY, Randolph Scott–Mclaughlin, White Plains, NY, for Plaintiff.

Charles G. Fiore, Lewis & Fiore, New York, NY, for Defendants Richard D. Diguglielmo, Richard B. Diguglielmo, Robert Errico, Mimie–Di Scat Corp. and Rosemarie Deli, Inc.

Andrea Moss, Corporation Counsel, New York, NY, for Defendant City of New York.

### MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

In the civil case arising out of the shooting death of Charles Campbell ("Campbell"), the jury rendered a verdict of negligence for plaintiff against Richard D. DiGuglielmo ("Richard D."), Richard B. DiGuglielmo ("Richard B."), Robert Errico, Rosemarie Deli, Inc. ("Rosemarie Deli") and Mimie–Di Scat, Corp. ("Mimie–Di Scat"). The jury awarded $250,000 for loss of financial support to Campbell's son Vaughn Campbell ("Vaughn"), $250,000 for loss of inheritance to Vaughn, $1,500,000 for loss of parental care and guidance to Vaughn and $2,500,000 for Campbell's conscious pain and suffering. The jury found no liability on the part of defendant City of New York. The remaining defendants move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), asserting that no evidence was presented at trial to support the verdict of negligence against defendant Robert Errico, the verdict of vicarious liability against Mimie–Di Scat or the damages awards. Defendants further move for a new trial pursuant to Federal Rule of Civil Procedure 59(a), asserting that the damages awards were excessive.

For the reasons set forth below, defendants' motions are DENIED.

## I. Background

Campbell, a thirty-seven year-old man, was shot by Richard D., an off-duty police officer, in the parking lot of the Venice Deli (the "Deli") on October 3, 1996. The defendant officer, Richard D., is incarcerated, having been convicted of homicide. The gun was owned by Richard D.'s father, Richard B., and was kept behind the counter in the Deli. The shooting occurred in the Deli parking lot. The Deli was owned by Rosemarie Deli. The parking lot and Deli real estate were owned by Mimie–Di Scat. Both corporations were represented at trial by Richard D.'s mother, Rosemarie DiGuglielmo.

The evidence produced at trial showed that Campbell parked in the parking lot of the Deli and proceeded across the street to another establishment. Defendant Richard B. approached Campbell and confronted him regarding the Deli's parking for customers only policy. As Campbell continued across the street, Richard B. returned to the Deli, came out with a no parking sticker and proceeded to affix the sticker to the window of Campbell's car. Campbell saw Richard B. affixing the sticker and ran back to the parking lot where he was met by defendants Richard B. and Robert Errico. The three men began fighting and Richard D. joined the fight. Several witnesses testified that Richard B., Robert Errico and Richard D. chased and caught Campbell, then held him down as they beat him about the head and body. At some point the three defendants let Campbell up. Campbell returned to his car and opened the hatchback to his car. As Campbell was doing so, Richard B. approached him. Campbell pulled a bat out of his car. Richard D.

returned to the Deli, retrieved his father's gun from under the counter, ran out to the parking lot and pointed the gun at Campbell. Witnesses testified that Campbell looked horrified and yelled "no" at least once. Richard D. then shot Campbell three times in the torso. As Campbell fell, Leif Larsen, a bystander, saw Campbell grimacing. Marianne Wekerle, a nurse and witness to the events surrounding the shooting, attempted to approach Campbell to offer assistance as he lay on the ground. Richard D. stood in front of Wekerle, still holding the gun, and instructed Wekerle to leave Campbell alone. Richard B. then told Wekerle to "get out of here." When officers arrived at the scene, they attempted to revive Campbell using cardiopulmonary resuscitation but were unsuccessful.

Evidence was presented that Campbell's life expectancy was thirty-nine additional years and his work-life expectancy was an additional twenty-six years. Evidence was presented that Charles Campbell's income at the time of his death was $42,867.69. William Campbell ("William"), Campbell's brother, testified that Campbell had worked with the sanitation department for nine years and had a second job with Saint Christopher's, a school for wayward children. William also testified as to his own expenses as Vaughn's current guardian, the nature of the relationship between Vaughn and Campbell and the values of the Campbell family, which included sending their children to college. At the time of the shooting, Vaughn was twelve years old. Evidence was presented that at the time of Campbell's death, Vaughn's mother, living in another state, had been incarcerated. Vaughn had been placed by his maternal grandmother in a halfway home pending his placement with Campbell. Reports from the home showed that Campbell was making regular visits and that the father and son were devoted to each other. Those reports describe Campbell as an excellent father. By the time of the shooting, Campbell had made all the necessary arrangements for Vaughn to be placed with Campbell. Vaughn was due to be placed with Campbell in less than a month. Testimony also was given that prior to Vaughn's placement in the halfway home, Campbell gave cash to Vaughn's caretakers for his support, regularly gave gifts to Vaughn and visited Vaughn, even after Vaughn's mother moved to another state.

## II. Discussion

Defendants first claim that there is no evidence to support the verdict against Robert Errico. Defendants assert that the jury could not have reasonably found that Errico was involved in any way with the shooting death of Campbell. Second, defendants claim that no evidence was presented that could support the conclusion that Robert Errico or Richard D. were acting on behalf of Mimie–Di Scat during the shooting. Third, defendants claim that no evidence was presented that could support the awards for loss of financial support, loss of inheritance, loss of parental care and guidance and intellectual, moral and physical training and conscious pain and suffering. Therefore, defendants ask that the verdict of negligence against Robert Errico, the verdict of vicarious liability against Mimie–Di Scat and the damage awards be set aside as a matter of law. Finally, defendants claim that based on the evidence, the damages awards were excessive. Therefore, defendants ask for a new trial on the issue of damages.

### A. Judgment as a Matter of Law

█ Judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). The Second Circuit

has held that judgment as a matter of law may be granted only if the district court finds:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir.2001) (evaluating judgment as a matter of law in a case applying New York State defamation law). The court "must view the evidence in the light most favorable to the non-movant, deferring to the jury's assessment of the evidence and all reasonable inferences the jurors could draw from that evidence." *Id.*

 Evaluating plaintiff's evidence in the most favorable light, the court finds that there was evidence of each of defendants' disputed claims. Errico participated in the fight immediately preceding the shooting. A reasonable juror could have concluded from the evidence that Errico escalated the level of violence and prevented the escape of Campbell. Therefore, the finding of negligence against Errico was reasonable. The evidence could reasonably have been construed by the jury to show that Errico and Richard D. were protecting the policy of the parking lot owned by Mimie–Di Scat and as such, were acting on Mimie–Di Scat's behalf. Therefore, the finding of vicarious liability was reasonable. Evidence was presented as to Campbell's income and job prospects which, assuming Campbell saved and invested carefully, could justify a finding of $250,000 in lost inheritance. Evidence was also presented that Campbell had participated in the financial support of his son, was intending to become his son's main source of financial support and that the Campbell family sent their children to college (potentially a $100,000 burden in and of itself). Therefore, the $250,000 loss of financial support award was reasonable. In addition, evidence was presented that Campbell was providing excellent parental support to his son Vaughn and intended to become even more instrumental in Vaughn's upbringing. Furthermore, evidence was presented as to the importance of Campbell in Vaughn's life considering the absence of other positive parental figures. Therefore, the $1,500,000 award for loss of parental guidance was reasonable. Finally, evidence was presented that Campbell saw the gun before he was shot, looked horrified and grimaced at passersby after he was shot. The jury could reasonably conclude from this evidence that Campbell suffered the mental anguish of knowing he was going to die and intense physical anguish. In light of this evidence, the award of $2,500,000 for pain and suffering was reasonable.

### B. Grant of a New Trial

 Defendants also move pursuant to Federal Rule of Civil Procedure 59(a) for a new trial based on the contention that the damages awards were excessive and not supported by the evidence. When, as here, a federal district court applies New York State substantive law, New York law guides the allowable damages. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 437, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). In *Gasperini*, the Supreme Court held that the question of whether the allowable upper limit on a damages award has been surpassed is a matter of state law. *See id.* at 435, 116 S.Ct. 2211. The New York standard requires that the court "shall determine that an award is excessive or inadequate if it deviates mate-

rially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c) (McKinney 2000). The district court must apply New York's "deviates materially" standard "in line with New York case law evolving under CPLR § 5501(c)." *Gasperini*, 518 U.S. at 438–37, 116 S.Ct. 2211. However, the circuit court's scope of review of the district court's decision is a matter of federal procedural law and will be applied. *Id.*

▇▇▇▇ The Second Circuit has held in a case applying state law that "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir.2000) (citation omitted) (upholding district court's decision to deny a grant of a new trial). The Second Circuit grants the district court wide discretion in deciding a motion for a new trial. *See De Falco v. Bernas*, 244 F.3d 286, 324 (2d Cir.2001) (holding that a district court's decision to grant or deny a motion for a new trial will be reversed only if the trial court's decision was an abuse of discretion); *Meloff*, 240 F.3d at 147. Although, upon review, the circuit court will "view the evidence in the light most favorable to the nonmoving party," *Caruolo*, 226 F.3d at 54, "[t]he district court is 'free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner.'" *Meloff*, 240 F.3d at 147. "Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted [by the district court] even if there is substantial evidence to support the jury's verdict." *Caruolo*, 226 F.3d at 54. However, the Second Circuit has held that where there is at least some evidence supporting a damage award, it is legally sufficient. *See De Falco*, 244 F.3d at 325–26.

▇▇▇▇ As discussed in section A above, evidence was presented supporting each of the damages awards. Evaluating the evidence under New York law, the court finds that the award of $1,500,000 for loss of parental care and guidance did not deviate materially from what would be reasonable compensation. *See Paccione v. Greenberg*, 256 A.D.2d 559, 682 N.Y.S.2d 442, 443–44 (N.Y.App.Div.1998) (reducing an award for loss of parental guidance of $2,500,000 per child to $1,500,000 per child). The court further finds that the award of $250,000 for loss of financial support did not deviate materially from what would be reasonable compensation. *See Lang v. Bouju*, 245 A.D.2d 1000, 667 N.Y.S.2d 440, 442 (N.Y.App.Div.1997) (upholding award of $250,000 for lost economic assistance to family of deceased adult son where evidence showed he helped around the house, shared out-of-pocket expenses and was planning to take over the family farming business). In addition, the court does not find that the award for loss of inheritance deviated materially from what would be reasonable compensation. *See Coyne v. Etra*, 183 Misc.2d 514, 703 N.Y.S.2d 869, 875–76 (N.Y.Sup.Ct.1999) (applying interest to an award of $1,284,600 for loss of inheritance for the beneficiaries of a teacher with a life expectancy of 28.8 years).

▇▇▇▇ Finally, the court addresses defendants' contention that the $2,500,000 verdict for pain and suffering was excessive. Defendants are correct in arguing that the New York Supreme Court Appellate Division often reduces large damages awards granted by juries for pain and suffering. *See, e.g., Rodd v. Luxfer USA Ltd.*, 272 A.D.2d 535, 709 N.Y.S.2d 93, 94 (N.Y.App.Div.2000) (reducing $1,000,000 award to $300,000); *Ramos v. La Montana Moving & Storage, Inc.*, 247 A.D.2d 333, 669 N.Y.S.2d 529, 529–30 (N.Y.App. Div.1998) (reducing a $3,000,000 award for pain and suffering to $900,000 where dece-

dent lived fifteen to thirty minutes after the accident); *Donofrio v. Montalbano*, 240 A.D.2d 617, 659 N.Y.S.2d 484, 484–85 (N.Y.App.Div.1997) (reducing award of $1,500,000 to $100,000). However, all the cases cited by defendants refer to pain and suffering awards granted in cases where the decedent was killed in an accident. Defendants cite no case where, as here, the decedent was conscious that he was being murdered.

 Mental anguish is an element of pain and suffering. In particular, in evaluating damages for pain and suffering under New York law, the fact finder must consider, *inter alia*, apprehension of impending death. *See Juiditta v. Bethlehem Steel Corp.*, 75 A.D.2d 126, 428 N.Y.S.2d 535, 543 (N.Y.App.Div.1980). Evidence was presented that Campbell perceived that he was about to be shot, was conscious for at least a short time after he was shot and was denied assistance as he died. The evidence could lead a reasonable juror to conclude that, in addition to the physical pain of being shot three times, Campbell suffered intense horror, fear and despair as a result of the shooting. A reasonable juror could conclude that the mental anguish suffered in such a situation was far greater than that of the victim of an accident, who might maintain hope of avoiding the injury or obtaining assistance afterward. Therefore, the court finds that the jury award of $2,500,000 did not deviate materially from what would be reasonable compensation.

## III. Conclusion

For the reasons set forth above, defendants' motions for judgment as a matter of law and a new trial are DENIED.

**SO ORDERED.**