*598
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 As part of a tort reform package adopted in 1985 and 1986, the Legislature enacted structured judgment statutes, requiring the periodic payment over time of personal injury awards of more than $250,000 for losses to be incurred in the future. To this end, CPLR article 50-A (§§ 5031-5039, applicable to medical and dental malpractice actions) and CPLR article 50-B (§§ 5041-5049, applicable to personal injury, property damage and wrongful death actions) direct that — after a lump-sum payment consisting of damages awarded for past injuries, attorneys’ fees and the first $250,000 of future damages — “the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments. * * * Such annuity contract shall provide for the payment of the annual payments of such remaining future damages over the period of time determined pursuant to this subdivision” (CPLR 5031 [e]; 5041 [e]).
 

 The cases now before us present three nuts-and-bolts questions relating to the calculation of damages. First, we are asked whether the proper basis for the “annual payments” is the future, or present, value of the remaining future damages award. Because the Legislature intended that plaintiffs be compensated for the full amount of their damages, we conclude — as did the Appellate Division — that it is the undiscounted future value of the award that is payable over time. We are asked, second, whether the 4% statutory additur is to be included in the damage award prior to determining attorneys’ fees, and third, whether plaintiffs recovery should be offset by Social Security survivor benefits. We hold that the additur was properly included in calculating attorneys’ fees, but that the survivor benefits should have been offset against the award.
 

 The
 
 Bryant
 
 Case
 

 Plaintiff Troy Bryant, as administrator of the estate of Dorothy D. Roberts, brought this medical malpractice and wrongful death action against defendant New York City Health and Hospitals Corporation in connection with Roberts’ treatment and death after undergoing a cesarean section and giving birth to a daughter. The jury returned a verdict in plaintiffs favor, totaling $21,150,000: $5,100,000 for pain and suffering, $4,000,000 for past loss of guidance, $50,000 for loss of earn
 
 *599
 
 ings to date, $9,000,000 for future loss of maternal guidance for 30 years, $900,000 for future loss of household services for 23 years, and $2,100,000 for future loss of earnings over a 37-year period. Supreme Court granted defendant’s motion to set aside the verdict as excessive unless plaintiff agreed — which he did — to reduce damages to $3,968,333: $1,000,000 for pain and suffering, $360,000 for loss of guidance to date, $50,000 for loss of earnings to date, $1,800,000 for loss of future guidance, $450,000 for loss of household services and $308,333 for loss of future earnings.
 

 Plaintiff and defendant, however, proposed markedly different judgments, centering on the three questions now before us. After Supreme Court determined that plaintiffs methodology was correct, and that there should be no offset for monthly Social Security survivor benefits payable to decedent’s daughter, defendant appealed. Although the Appellate Division affirmed the trial court on the law questions relating to the damages calculation, it conditioned judgment on plaintiff’s stipulation to a further reduction for specified past losses and future lost parental guidance. Again, plaintiff agreed to the reduction, and an amended judgment was entered.
 

 The
 
 Depradine
 
 Case
 

 Plaintiff Kurt Depradine sustained severe, permanent brain damage as a result of a City hospital’s negligence during his birth. The jury awarded him a total of $47,418,603: $589,723 for cost of health aid until age 21 for 11.5 years, $4,076,280 for cost of therapies for 61 years, $3,944,600 for impairment of earning capability for 43 years, $23,808,000 for custodial care from age 21, $2,500,000 for pain and suffering until the date of the verdict, and $12,500,000 for future pain and suffering for 61 years. On defendant’s application, Supreme Court held that each element of the damages award was “grossly excessive” and granted a new trial unless plaintiff stipulated to a reduced award of $9,109,692, consisting of $452,088 for cost of health aid until age 21, $1,111,604 for cost of therapies, $946,000 for impairment of earning capacity, $3,600,000 for custodial care from age 21, $1,000,000 for past pain and suffering and $2,000,000 for fhture pain and suffering.
 

 After plaintiff consented to the reductions, defendant sought to have the future damage award annuity contract determined by the present value of those damages, and to exclude the 4% additur from the damages calculation. Plaintiff, by contrast, based the annual payments on future damages, undiscounted,
 
 *600
 
 and. included the 4% statutory additur in his proposed judgment. Supreme Court upheld plaintiffs calculations, and defendant appealed. Citing its decision in
 
 Bryant,
 
 the Appellate Division affirmed, concluding that the court properly structured the judgment pursuant to CPLR 5031 (e). In each case, this Court granted defendant leave to appeal.
 

 The Structured Judgment Statutes
 

 Prior to the enactment of CPLR articles 50-A and 50-B, future damage awards were discounted to present value and payable at once, requiring defendants to turn over money immediately and leaving plaintiffs free to enjoy the fruits of those dollars. Responding to a “malpractice crisis”
 
 (see,
 
 Governor’s Program Mem, 1985 NY Legis Ann, at 131), the Legislature in 1985 passed CPLR article 50-A which, in medical and dental malpractice actions, requires periodic payments of future awards as opposed to the immediate lump-sum payment of a discounted award. Article 50-B, the counterpart for personal injury, property damage and wrongful death actions, followed in 1986.
 

 The dual purpose behind this legislation was to “moderate the cost of medical malpractice premiums, while assuring adequate and fair compensation for injured persons” (Governor’s Program Mem, 1985 NY Legis Ann, at 132;
 
 see also, Schultz v Harrison Radiator Div. Gen. Motors Corp.,
 
 90 NY2d 311, 317-318). By providing that injured parties receive future damage awards in periodic installments paid over time the Legislature sought to guarantee plaintiffs “that compensation for future health care costs, lost earnings and other needs [would] be available to meet those expenses as they [arose]” (Governor’s Program Mem, 1985 NY Legis Ann, at 132). Concomitantly, defendants would benefit because “paying a judgment in periodic installments reduces the overall cost of the judgment by permitting the insurer to retain and invest the balance of the award before the installments come due [and] additional savings [would] result from relieving the defendant from the obligation to make payments toward the plaintiffs future health care and other non-economic expenses in the event of the plaintiffs death”
 
 (id.,
 
 at 132;
 
 see also,
 
 CPLR 5035 [a]; 5045 [a]).
 
 [1]
 

 The structured judgment provisions have deservedly been labeled “ ‘circuitous,’ ‘vexing,’ as ‘every Judge’s nightmare,’ and
 
 *601
 
 ‘[a]t best * * * ambiguous [which] can lead to inexplicable results’ ”
 
 (Bermeo v Atakent,
 
 241 AD2d 235, 242 [citations omitted]). Awards for past damages and attorneys’ fees, as well as the first $250,000 of awards for future damages, are immediately payable in a lump sum (CPLR 5031 [b], [c]; 5041 [b], [c]).
 
 [2]
 
 Defendant is then required to purchase an annuity contract that will “provide for the payment of the annual payments of such remaining future damages” (CPLR 5031 [e]; 5041 [e]). Further, the “annual payment for the first year shall be calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment”
 
 (id.).
 

 The court, additionally, must “enter a judgment for the amount of the present value” of the annuity contract “that will provide for the payment of the remaining amounts of future damages in periodic installments”
 
 (id.).
 
 The present value of the annuity contract “shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages, as calculated pursuant to this subdivision”
 
 (id.).
 

 Future v Present Value
 

 Against this mind-numbing backdrop we turn to the first question presented: should the annual payments, which are the basis of the annuity contract, be based on the future, or present, value of the remaining future damages award?
 
 [3]
 
 Plainly, the difference can be considerable.
 

 
 *602
 
 [1] Defendant urges that because CPLR 5031 and 5041 were tort reform measures intended, among other things, to reduce malpractice insurance premiums, the Legislature required payment of the discounted, present value of future damage awards over time. The future awards, in defendant’s view, should therefore have been reduced to present value and the present value paid in installments
 
 (see, Silvestri v Smallberg,
 
 165 Misc 2d 827,
 
 affd on other grounds
 
 224 AD2d 172,
 
 affd
 
 88 NY2d 1004,
 
 supra; Alvarez-Icaza v Cartier Inc.,
 
 920 F Supp 449).
 
 [4]
 
 The language, history and context of the structured judgment statutes, however, indicate otherwise.
 

 Because our purpose here, as in all statutory interpretation cases, is to implement the
 
 will
 
 of the Legislature, we turn first to the
 
 words
 
 of the Legislature. Despite other complexities, the statutory language supports plaintiffs’ position over defendant’s. CPLR 5031 and 5041 consistently refer to payment of
 
 “future
 
 damages in periodic installments,” and compensation for the
 
 “full amount of the remaining future
 
 damages” (emphasis added). In
 
 Schultz v Harrison Radiator Div. Gen. Motors Corp. (supra,
 
 90 NY2d, at 316-317), this Court construed the virtually identical language of CPLR 4111.
 
 [5]
 
 CPLR 4111, which was “necessary to implement” the structured judgment statutes
 
 (see,
 
 Mem of State Executive Dept. 1985 McKinney’s Session Laws of NY, at 3019), requires that in “actions in which
 
 *603
 
 article fifty-A or fifty-B of this chapter applies, in computing said damages, the jury shall be instructed to award the
 
 full amount of future damages,
 
 as calculated, without reduction to present value” (CPLR 4111 [d], [f] [emphasis added]).
 

 As we explained in
 
 Schultz,
 
 inclusion of an inflation adjustment in future damage awards “does not provide additional compensation for a plaintiff above and beyond the damages already awarded; rather, it ensures that the passage of time will not devalue the award because of a general rise in prices for goods and services, including such items as medical care”
 
 (Schultz v Harrison Radiator Div. Gen. Motors Corp., supra,
 
 90 NY2d, at 319;
 
 see also, id.,
 
 at 317 [evidence of inflation is necessary to ensure plaintiff receives the “full amount” of future damages]). In holding that the trial court properly permitted expert testimony as to inflation despite inclusion of the 4% additur in calculating the structured payments, we explained that absent adjustment for inflation “plaintiffs might receive less than the full recovery”
 
 (id.,
 
 at 319).
 

 Reduction of the jury’s future damages award to present value, and then payment of that already discounted award in future installments over time — defendant’s proposal — does not assure recovery of the “full amount” of future damages. Plaintiffs would receive reduced-to-present-value awards paid in less valuable, future dollars.
 
 [6]
 
 Moreover, use of the present value of future damages as the basis for the annual payments would be at odds with
 
 Schultz,
 
 as it would for all intents and purposes extract the jury’s inflation adjustment from the plaintiffs award. Nothing in the statutes’ language supports this unintended result
 
 (see also, Fisk v City of New York,
 
 256 AD2d 167,
 
 lv denied
 
 93 NY2d 845; 1A NY PJI3d 1148 [1999]; 10 Weinstein-Korn-Miller, NY Civ Prac ¶ 5031.03).
 

 Indeed, using the present value of future damages as the basis for the annual payments would undermine — not guarantee — the legislative objective of “compensation for future health care costs, lost earnings and other needs”
 
 (see,
 
 Governor’s Program Mem, 1985 NY Legis Ann, at 132).
 

 The context of CPLR 5031 (e) and 5041 (e) further confirms that the future, rather than present, value of future damages
 
 *604
 
 is the proper basis for calculating the annual payments. In addition to CPLR 4111, which prescribes that the jury “be instructed to award the full amount of future damages * * * without reduction to present value,” CPLR 5034 and 5044 direct that upon granting a judgment creditor’s petition for lump-sum payment of the judgment after there has been a default, the court “shall total the remaining periodic payments due and owing * * * and
 
 shall not convert these amounts to their present value”
 
 (emphasis added). Similarly, CPLR 5035 (b) and 5045 (b), which authorize conversion of periodic installments allocable to loss of future earnings to a lump-sum payment upon the death of the judgment creditor, require that the court calculate “the present value of such payments.” In directing that the judgment or remaining annuity contract payments not be reduced or converted to present value or explicitly requiring calculation of the present value of remaining payments, these related CPLR provisions demonstrate that the basis for payment of the judgment is the future, not the present, value of the future damages awards.
 

 Thus, we conclude that the proper basis for determining the annual payments under CPLR articles 50-A and 50-B is the future, not present, value of the future damages award.
 

 Attorneys’ Fees
 

 Defendant next maintains that Supreme Court in
 
 Bryant
 
 erred by including the statutory additur of 4% before calculating attorneys’ fees. Because the additur is intended to compensate plaintiffs for deferred receipt of a portion of the award, and attorneys’ fees are payable in a lump sum, defendant contends inclusion of the additur was “gratuitous.” Based on the language of the structured judgment provisions, we disagree.
 

 CPLR 5031 (c) and 5041 (c) specify that the “portion of the attorney’s fees related to the future periodically paid damages shall * * * be payable in a lump sum, based on the present value of the annuity contract purchased to provide payment of such future periodically paid damages.” CPLR 5031 (e) and 5041 (e), however, require that attorneys’ fees be excluded from calculation of the annuity contract. Confronted with the patent ambiguity of CPLR 5041 and the impossibility of applying the statute as written, in
 
 Rohring v City of Niagara Falls (supra,
 
 84 NY2d, at 67) we explained that “article 50-B, like article 50-A, fails to make clear the sequence of calculations to be followed by a trial court in applying subdivision (c) and
 
 *605
 
 subdivision (e).” The proper methodology, we concluded, is “to determine the present value of subdivision (e) future damages before attorney’s fees and then reduce that amount by the present value of attorney’s fees”
 
 (id.,
 
 at 68).
 

 Subdivision (e) future damages include the 4% additur
 
 (see,
 
 CPLR 5031 [e]; 5041 [e] [requiring that annuity contract provide for “payment of the annual payments,” which include the additur]). Thus, it follows that the additur should be included in determining attorneys’ fees
 
 (see, Fisk v City of New York,
 
 256 AD2d 167,
 
 supra; Karagiannis v New York State Thruway Auth.,
 
 209 AD2d 993, 994; 1A NY PJI3d 1147 [1999]). Moreover, inclusion of the additur in such an award is consistent with statutory provisions relating to the compensation of attorneys, which base fees on plaintiffs’ recovery
 
 (see,
 
 Judiciary Law § 474-a [contingent fees for medical malpractice cases “computed on the net sum recovered after deducting * * * expenses and (specified) disbursements”]).
 

 We therefore conclude — as did the Appellate Division — that the additur should be included before calculating attorneys’ fees.
 

 Collateral Source Offset
 

 Under the common law, the “collateral source rule” precludes reducing a personal injury award by the amount of any compensation received from a source other than the tortfeasor
 
 (see, Oden v Chemung County Indus. Dev. Agency,
 
 87 NY2d 81, 85). In 1975, the Legislature limited the rule by amending CPLR 4010 to permit juries in medical malpractice cases to consider evidence of collateral source payments when determining the award for past economic loss (L 1975, ch 109).
 

 Over time, the Legislature has continued to trim back the collateral source rule and permit offsets against plaintiffs’ recoveries. In medical malpractice cases the Legislature in 1981 made reduction for compensation from collateral sources mandatory, and imposed responsibility for the reductions on the court (L 1981, ch 269). In 1984, when CPLR 4010 was repealed and reenacted as CPLR 4545 (a), the Legislature added subdivision (b), which extended the mandatory offset for collateral source payments to personal injury and wrongful death awards obtained by public employees (L 1984, ch 701). Then, as part of the same reform that produced the structured judgment provisions contained in CPLR articles 50-A and 50-B, the Legislature twice amended CPLR 4545 to broaden its impact and further erode the common-law collateral source rule.
 

 
 *606
 
 Significantly, in 1985 the Legislature for the first time required that collateral sources offset not only past but also future economic losses in medical and dental malpractice actions (L 1985, ch 294, § 8). This amendment required that future awards be offset by “those sources of compensation that [would] with reasonable certainty, be available to the plaintiff in the future” (Governor’s Program Mem, 1985 NY Legis Ann, at 132). Shortly thereafter, in 1986, the Legislature added subdivision (c), which mirrored subdivision (a) for personal injury, property damage and wrongful death actions (L 1986, ch 220, § 36).
 

 Pursuant to CPLR 4545 (a) and (c):
 

 “where the plaintiff seeks to recover * * * loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance (except for life insurance), social security (except those benefits provided under title XVIII of the social security act), workers’ compensation or employee benefit programs (except such collateral sources entitled by law to liens against any recovery of the plaintiff). If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits.”
 

 These provisions further require that in “order to find that any future cost or expense will, with reasonable certainty, be replaced or indemnified by the collateral source, the court must find that the plaintiff is legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement, subject only to the continued payment of a premium and such other financial obligations as may be required by such agreement” (CPLR 4545 [a], [c]).
 

 It is not enough, however, that plaintiff has received or will receive compensation for injuries as a result of the incident
 

 
 *607
 
 giving rise to the lawsuit. CPLR 4545 was intended to eliminate double recoveries, not provide defendants and their insurers with an “undeserved windfall.” Thus, in
 
 Oden (supra,
 
 87 NY2d, at 87), we made clear that “only those collateral source payments that actually replace a particular category of awarded economic loss may be used to reduce the injured’s judgment,” and “that a direct correspondence between the item of loss and the type of collateral reimbursement must exist before the required statutory offset may be made.”
 

 Defendant urges that because Social Security survivor benefits are intended to compensate for the lost economic support of a deceased parent, the Appellate Division in
 
 Bryant
 
 erred by failing to reduce plaintiffs award for future lost earnings.
 
 [7]
 
 Plaintiff counters that (1) the Appellate Division correctly concluded that the “Social Security Survival Benefits * * * [did] not duplicate or correspond to what the decedent would have earned had she lived” (250 AD2d 797, 798), (2) survivor benefits are in the nature of life insurance, and (3) Social Security benefits are not guaranteed by “a contract or otherwise enforceable agreement” and therefore can never offset future losses. We agree with defendant.
 

 CPLR 4545 authorizes the court to “reduce the amount of the plaintiffs award if it finds that any element of the economic loss encompassed in the award was or will be replaced, in whole or in part, from a collateral source”
 
 (Oden v Chemung County Indus. Dev. Agency, supra,
 
 87 NY2d, at 83-84). The Social Security Act and its legislative history make plain that child survivor benefits were intended to replace a parent’s earnings.
 

 Social Security survivor insurance benefits for children are governed by 42 USC § 402 (d) (1), which provides that every “child * * * of an individual who dies a fully or currently insured individual” is entitled to benefits provided, at the time of the application the child is unmarried and either under 18, a full-time elementary or secondary school student under 19, or under a disability that began before age 22. Significantly, to obtain child survivor benefits, it must be established that the child “was dependent upon” the deceased parent (42 USC § 402 [d] [1] [CD.
 

 
 *608
 
 Indeed, the very purpose underlying the Social Security program was
 

 “to provide a continuing income for a worker and his family when the worker’s earnings are cut off by his retirement in old age, his disability, or his death.
 
 To accomplish this purpose, the program provides benefits not only for the worker himself but also for those of his relatives whom the worker normally supports or has a legal obligation to support. Benefits are provided for these relatives because they lose support, or a potential source of support, when the worker’s earnings are cut off’ (Report of 1971 Advisory Council on Social Security, HR Doc No. 92-80, 92d Cong, 1st Sess 22 [Apr. 5, 1971];
 
 see also, Califano v Jobst,
 
 434 US 47, 50 [Social Security death benefits “were intended to provide persons dependent on the wage earner with protection against the economic hardship occasioned by loss of the wage earner’s support”]). (Emphasis added.)
 

 Because child survivor benefits are intended to compensate for a parent’s lost earnings, there is a “close correspondence between the collateral source payment and the item of pecuniary loss to be replaced”
 
 (Oden v Chemung County Indus. Dev. Agency, supra,
 
 87 NY2d, at 89). If plaintiff had the benefit of her mother’s earnings, she would not be entitled to Social Security survivor benefits. Similarly, the jury award for future earnings is predicated on plaintiff’s inability to reap the benefits of her mother’s financial support. Thus, permitting recovery of the full lost earnings award and Social Security survivor benefits would doubly compensate plaintiff and undermine the legislative goal of eliminating duplicative recoveries.
 

 Plaintiff’s arguments that CPLR 4545 prohibits reduction of future losses for Social Security survivor benefits are without merit. CPLR 4545 does not exempt from offset collateral sources that are “in the nature of life insurance” or “analogous to life insurance benefits”
 
 (see, Krum v Green Is. Constr. Co.,
 
 249 AD2d 730, 731). To the contrary, CPLR 4545 (a) and (c) list categories of potential collateral sources that can offset recovery, and where the Legislature intended to exclude a specific type of payment or benefit within those categories— thereby exempting them from offset — it did so explicitly
 
 (see,
 
 
 *609
 

 e.g.,
 
 CPLR 4545 [a], [c] [permitting offset by “insurance (except for life insurance), social security (except those benefits provided under title XVIII of the social security act)”]). Social Security benefits are among the collateral sources that can reduce recovery for future losses. Only those benefits provided under title XVIII of the Social Security Act cannot be used to offset a plaintiff’s award.
 

 In specifying that only Social Security benefits under title XVIII of the Social Security Act cannot offset recovery, CPLR 4545 necessarily identifies all other types of Social Security benefits — including survivor benefits — as collateral sources that reduce recovery
 
 (see, Matter of 1605 Book Ctr. v Tax Appeals Tribunal,
 
 83 NY2d 240, 245-246 [“the interpretative maxim, the expression of one is the exclusion of others, supports the conclusion that what was omitted from the exemptions was not intended to be excluded from the otherwise comprehensive” sweep of the statute],
 
 cert denied
 
 513 US 811;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 240). Moreover, although CPLR 4545 lists life insurance as a source that may not reduce recovery, the statute specifically classifies it as a particular type of “insurance” unrelated to Social Security.
 

 Likewise, we reject plaintiffs argument that Social Security can never be used to offset future losses. Plaintiff maintains that because Social Security is not provided pursuant to a “contract or otherwise enforceable agreement,” the court, as a matter of law, cannot determine with the requisite “reasonable certainty” that the future loss will be replaced or indemnified. The requirement that a collateral source be provided pursuant to a contract or agreement, however, cannot be interpreted as expansively as plaintiff suggests. Such an interpretation would categorically read Social Security out of the statute as a potential source for offsetting future recovery, yet the statute explicitly states that “social security (except those benefits provided under title XVIII)” is a collateral source that can be used to offset “any” past or future cost or expense
 
 (see,
 
 Governor’s Program Mem, 1985 NY Legis Ann, at 132-133;
 
 see also, Caruso v LeFrois Bldrs.,
 
 217 AD2d 256, 258 [Wesley, J.]).
 

 A more reasonable interpretation of the statute, which would give effect to both the words and the intent of the Legislature, would be that Social Security benefits can be used to offset future losses provided that “with reasonable certainty” they
 
 *610
 
 will indemnify plaintiff.
 
 [8]
 
 Application of the “contract or otherwise enforceable agreement” requirement should be limited to a situation where plaintiff does not have a protected interest in a government entitlement. Because the trial court and Appellate Division erroneously ruled as a matter of law that Social Security benefits could not offset plaintiff’s future lost earnings award, we remit the matter to the trial court for a determination of any factual questions bearing on this issue.
 

 As a concluding observation, we note that as CPLR articles 50-A and 50-B reach their 15th anniversary, having generated a good deal of frustration and litigation, it would perhaps be an opportune time for the Legislature to review these enactments to assure that, in actual operation, they are meeting their objectives and not — as submissions before us urge— egregiously overcompensating or undercompensating anyone.
 

 Accordingly, in
 
 Bryant,
 
 the judgment appealed from and order of the Appellate Division brought up for review should be modified, without costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed. In
 
 Depradine,
 
 the order of the Appellate Division should be affirmed, with costs.
 

 Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 In
 
 Bryant v New York City Health & Hosps. Corp.:
 
 Judgment appealed from and order of the Appellate Division brought up for review modified, etc.
 

 In
 
 Depradine v New York City Health & Hosps.
 
 Corp.: Order affirmed, with costs.
 

 [1]
 

 . Under certain circumstances — for example, a plaintiff’s death — plaintiff will not recover portions of future damages, such as installments for future
 
 *601
 
 health care, future pain and suffering and other non-economic losses not due at the time of plaintiff’s death (see, CPLR 5035 [a]; 5045 [a]).
 

 [2]
 

 . Attorneys’ fees based on past damages and the first $250,000 of future damages are easily computed by deducting the fee amounts from presently payable sums (CPLR 5031 [c]; 5041 [c]). Attorneys’ fees for future awards are ascertained by determining the present value of future damages and correspondingly reducing that amount by the present value of attorneys’ fees
 
 (Rohring v City of Niagara Falls,
 
 84 NY2d 60, 68).
 

 [3]
 

 . Plaintiffs, relying on cases applying future value, insist that recoveries will otherwise be eviscerated
 
 (see, e.g., Petrides v Goodgold,
 
 170 Misc 2d 770). Defendant, relying on cases applying present value, insists that plaintiffs will otherwise be vastly overcompensated
 
 (see, e.g., Silvestri v Smallberg,
 
 165 Misc 2d 827,
 
 affd on other grounds
 
 224 AD2d 172,
 
 affd
 
 88 NY2d 1004).
 
 Amicus
 
 FOJP Service Corporation and the Combined Coordinating Council, Inc. says that both sides are wrong, urges yet a third new approach, and asks that we remit for further proceedings or simply devise our
 
 *602
 
 own methodology
 
 (see also,
 
 Wolkoff and Hanushek,
 
 The Economics of Structured Judgments Under CPLR Article 50-B,
 
 43 Buff L Rev 563 [1995]; Argentine,
 
 From Verdict to Judgment: The Evolution, Confusion and Reformation of CPLR Articles 50-A and 50-B,
 
 40 Buff L Rev 917 [1992]). We decline, however, to announce a rule untested by the courts or parties during the years these cases have been in litigation.
 

 [4]
 

 . The
 
 Silvestri
 
 cases purport to rely on
 
 Rohring,
 
 where this Court held that the proper methodology for calculating attorneys’ fees based on future damages is “to determine the present value of subdivision (e) future damages before attorneys’ fees and then reduce that amount by the present value of attorneys’ fees”
 
 (Rohring v City of Niagara Falls, supra,
 
 84 NY2d, at 68). These courts deduce that it is the present value of each item that is to be used for all remaining calculations, including determination of periodic payments
 
 (see, e.g., Silvestri v Smallberg, supra,
 
 165 Misc 2d, at 831). As defendant concedes, however, in
 
 Rohring
 
 the Court did not have before it the question whether annual payments are to be based on the present or future value of future damages. In actual fact, the annual payments in
 
 Rohring
 
 were calculated using the future value of future damages
 
 (see, Rohring v City of Niagara Falls,
 
 192 AD2d 228,
 
 affd
 
 84 NY2d 60).
 

 [5]
 

 . CPLR 4111 requires that juries itemize verdicts by specifying, among other things, the categories of damages, whether damages are for past or future losses, and the number of years over which a future damages award is intended to compensate the plaintiff.
 

 [6]
 

 . Current payments allow a recipient to realize growth through investment and are therefore more valuable than the same dollars paid at a future date. Additionally, due to inflation, obviously the same dollar will buy more goods today than it will tomorrow (see, Wolkoff and Hanushek,
 
 The Economics of Structured Judgments Under CPLR Article 50-B,
 
 43 Buff L Rev 563, 564 [1995]).
 

 [7]
 

 . Specifically, defendant alleges that plaintiffs future lost earnings award should be reduced by the amount of $48,164, corresponding to monthly Social Security survivor benefits of $288 paid to decedent’s daughter, assuming an annual increase of 3% and continuation of the benefits until she reaches 18.
 

 [8]
 

 .
 
 See, Weiler v Newbach,
 
 47 Hun 166, 169 (“this conclusion is more in harmony with the rules of construction, than to hold that in one part of the same statute the legislature deliberately enactfed] one thing, and then in a subsequent part of the same statute revoke [d] the previous enactment without any apparent reason for so doing”),
 
 affd
 
 114 NY 36.