OPINION OF THE COURT
Donald J. Corbett, Jr., J.
This decision addresses the requirements of CPLR article 50-B concerning: (1) the deduction of litigation costs from future damages that are not reduced to present value; (2) the proper methodology for the calculation for reduction of future damages to present value; and (3) whether future economic damages should be subject to the annual 4% increase imposed by CPLR 5041 (e).
Defendant objects to claimants’ deduction of litigation expenses from the undiscounted future value of the future damages. It correctly notes that CPLR 5041 (c) requires the proration of attorney’s fees relating to future damages in excess of $250,000 after determination of the present value. Defendant then argues that since the Legislature has directed that proration specifically, and since CPLR 5041 does not direct claimants to prorate litigation expenses against future damages in excess of $250,000, overcompensation would result.
While the defendant would have the court find that there was no affirmative statutory direction to prorate litigation expenses against future damages, since the Legislature did give a specific direction with respect to proration of attorney’s fees relating to future damages in excess of $250,000 after determination of present value, I find that it inferentially chose not to include litigation expenses in that statutory directive. Prior judicial reference to this question is sparse, and of limited guidance. In O'Mara v Rochester Gas & Elec. Corp. (206 AD2d 924), the Fourth Department alluded to the topic, but in Reliant Airlines v County of Broome (1995 US Dist LEXIS 17603, 1995 WL 694626 [Nov. 22, 1995]),* in the United States District Court for the Northern District of New York, the Honorable Neil McCurn noted, in footnote 5, that the OMara Court was referring to payment of attorney’s fees and not to litigation expenses.
This analysis lends support to my ruling, without offending the substance or spirit of the Fourth Department’s decision *241 in O’Mara (supra). I find that, since there is no mention in CPLR 5041 (b) or (c) of present value calculations in connection with either the first $250,000 of future damages, or fees or costs, that the Legislature intended litigation expenses to be prorated and deducted from the future value of future damages.
The primary issues before me relate to defendant’s provocative arguments about calculations of future damages in the classroom, that obeisance to textbook economics would result in a different, more defendant-friendly calculation. Defendant urges that its method of calculation merely levels the playing field and does not result in skewed compensation favoring either party. However, we are not in a pristine classroom, we are in a courtroom, working under a statute, divining the Legislature’s intent and following the judicial precedent of courts of higher jurisdiction, including the Court of Appeals which reiterated that the statutory structured judgment provisions have deservedly been labeled circuitous, vexing, every Judge’s nightmare, at best ambiguous possibly leading to inexplicable results (Bryant v New York City Health & Hosps. Corp., 93 NY2d 592, 600-601), and which further noted that, in parts, CPLR 5041 contained patent ambiguity with the impossibility of applying the statute as written (id., at 604, citing Rohring v City of Niagara Falls, 84 NY2d 60, 67).
Defendant’s expert attempts to show that the proper methodology for the calculation of the present value of the future awards has not yet been determined judicially, that the Court of Appeals in Bryant (supra, at 601-602, n 3) declined to announce a rule that was untested in the trial courts, and that the instant matter allows such initial consideration.
Defendant’s expert would not include the 4% additur to any item of damage other than future pain and suffering, because he calculates each year of future economic damages to be a separate calculation, not subject to the heretofore traditional method (in the courtroom) of totaling the damages over the years after including an inflation factor (Schultz v Harrison Radiator Div. Gen. Motors Corp., 90 NY2d 311, 317-320; cf., Kelly v State of New York, 259 AD2d 962), then taking the yearly average and thereafter adding the 4% additur included in CPLR 5041 (c). By incorporating the inflation (growth) factor determined by the court to each year separately, defendant believes that claimants are made whole for each particular year of damage, and thus there is no remainder to which to apply the 4% additur. Defendant’s expert, who testified that he *242 was involved in one of the amicus briefs referenced in footnote 3 in Bryant (supra), acknowledges that future pain and suffering is based upon future life expectancy, is not quantified on an annual basis, and, in this case, is averaged over the 10-year statutory maximum, and as such is subject to the 4% additur. Indeed, defendant’s expert believes that this is the only item of future damages to which the statutory additur should be applied. He argues that one should not take each year of economic damages, apply the inflation rate, then total all the years and take an average, to which you would then apply the additur. Defendant argues that this method of calculation would overcompensate the claimants, just like the method of calculation in Silvestri v Smallberg (165 Misc 2d 827, affd on other grounds 224 AD2d 172, affd 88 NY2d 1004) undercompensated that plaintiff. Defendant argues that its methodology of calculation is consistent with all prior Court of Appeals rulings, including Rohring (supra) and Bryant (supra).
Claimants, not surprisingly, suggest that the court simply follow the statute, albeit a mind-numbing task (Bryant v New York City Health & Hosps. Corp., supra, at 601), and adopt the testimony of their expert, who has applied heretofore accepted methods of calculation. Needless to say, the contrasting methods of calculation result in a substantial monetary differential. Defendant cites the Court of Appeals in Rohring (supra, at 67) to reiterate its full and fair compensation argument.
Generally speaking, where the damages are ascertained by the jury, the amount of damages for, say, lost future wages is enumerated in a lump sum for the entire work life expectancy, and an economist would be left to speculate as to the factual determination of the amount found in lost income for year one. In other words, an economist would not be able to make the year-by-year calculation of lost wages, which defendant theorizes allows no remainder to which to add the 4% additur. Hence, where the amount of money awarded in lost future earnings for year one was specified in my earlier decision, defendant could make its calculation which results in no remainder in each year, and therefore there would be no remainder to which to apply the 4% additur.
Defendant’s theory only works where the finder of fact provides actual year-one damages for each item of economic damage. But since juries generally do not provide such specificity, economists are forced either to speculate, or to take an *243 average over the term of each aspect of damages. Taking such an average defeats the argument that each year is an item of damage unto itself (unless of course there is no growth factor whatsoever), as then it leaves a remainder to which the 4% additur applies. This theory cannot survive in most trials by jury, but only in a nonjury setting, potentially creating a two-tiered system, each adopting differing methods of calculating future damages. As mind-numbing as CPLR articles 50-A and 50-B are, such an inequitable result could hardly have been in the Legislature’s mind, for it would lead to lower amounts of money to those injured persons prevented by statute (i.e., Court of Claims Act) or by court rule (see, CPLR 4102, 4103) from having a jury.
Thus, I am compelled to reject defendant’s argument in this regard on two bases. First, I could not adopt a methodology which discriminates against those appearing in nonjury settings, but second, and more significantly, I cannot accept that methodology as being consistent with the statutory intent. Irrespective of the pure economic theory that each year of damages is a separate item of damage which is fully compensated annually and is not subject to the 4% additur, the statute cannot be read as suggesting such a result.
Defendant would have me read the last sentence of CPLR 5041 (e) as support for its theory, but I cannot agree. I interpret this provision of the statute to limit the 4% additur only on an item-by-item calculation, and thus when damages for future pain and suffering are fully paid after 10 (or fewer) years, then the additur as to that item is terminated. The statute must be read in a manner that allows it to be internally consistent, and where it says that when a portion of future damages “terminates in accordance with the provisions of this article” (CPLR 5041 [e]) the 4% is added only to the remaining damages, it is referring to the period of years determined by the trier of fact in arriving at the itemized verdict, not the termination on an annual basis of any remaining damages for that year. I find that the Legislature did not contemplate and intend such a methodology of calculation. I am well aware that the defendant sees this issue as crystallized before me, with a theoretically adequate record and perhaps ultimately to provide the Court of Appeals with the opportunity it declined in Bryant (supra, n 3). Accordingly, I adopt the calculations set forth by claimants’ expert, and decline defendant’s invitation to venture into the *244 classroom of pure economic theory. The statute which I am obliged to apply speaks in the courtroom.
[Portions of opinion omitted for purposes of publication.]

 This was affirmed by the Second Circuit Court of Appeals, albeit in an unpublished decision, reported at 122 F3d 1057.