OPINION OF THE COURT
Diane L. Fitzpatrick, J.
The court awarded damages to claimants for decedent’s *213 personal injuries and on behalf of decedent’s distributees for his wrongful death in an amended decision dated November 19, 2012.[1] Pursuant to CPLR 4545, defendant requested a collateral source hearing which was held on May 30, 2013. The court has considered the testimony, exhibits, and posttrial submissions and finds that defendant is entitled to some collateral source deductions as set forth herein.
At issue at the hearing was whether the court’s award to decedent’s children and only distributees, Brandon and Ryan Gardner, for loss of parental support and loss of inheritance should be offset by the payments they received from the Armed Forces Survivor Benefit Plan, the Social Security Administration for survivor insurance benefits, and from the TIAA-CREF retirement account distribution. The parties stipulated that other sums paid to the children are life insurance and not subject to an offset by CPLR 4545.[2]
At the time of decedent’s death, he was retired from the United States Air Force and receiving full pension benefits. Normally, armed services retirement pay terminates upon the retiree’s death.[3] Title 10 of the United States Code, sections 1447-1455, establishes a Survivor Benefit Plan which permits a portion of a retiree’s retirement benefit to be paid to their surviving beneficiaries. Decedent enrolled in the program for “child-only full base amount coverage.”[4] His enrollment provided that in the event of an untimely death, his children would receive a share of 55% of his base salary until they each reached the age of 18, married, or until the age of 22 if they remained full-time students. The boys received equal shares of the benefit until Brandon reached the age of 22 in 2006. Ryan then received the entire benefit amount from 2007 until he turned 22 in 2010;[5] 6Ryan received a total of $180,932.25,[6] and Brandon received a total of $50,485.25. Both boys received IRS 1099-R forms annually for the payments each received.[7] Decedent paid a premium of $24.44 monthly for the surviving benefit coverage in the form of a reduction to his retirement *214 pay.[8] The premium was a pretax deduction. Decedent retired in August 2001.[9]
Ryan Gardner also received Social Security survivor benefits which were paid to his mother, Cynthia Gardner, on his behalf from January 2004 through June 2006, in the amount of $41,475.[10] He received an additional lump-sum death payment of $255 in March 2004.* [11]
Both boys received $12,997.27 each, in a lump-sum payment from decedent’s TIAA-CREF retirement annuity account, which decedent obtained through his employment with the Jet Propulsion Laboratory to provide retirement income for himself. Decedent began the annuity when he started his employment with the Jet Propulsion Laboratory in October 2002. Because decedent was not receiving benefits from the annuity at the time of his death, his beneficiaries received the accumulated funds in the account.
It is defendant’s position that all of these payments are collateral sources under CPLR 4545 (c) and it is entitled to an offset to the court’s awards for loss of support and inheritance.[12] To support its position, the State called Anthony Riccardi, a self-employed economist and actuary, to discuss these payments to decedent’s sons, the application of CPLR 4545, and his opinion as to the correspondence of these payments to this court’s damages decision on the wrongful death action.
In Mr. Riccardi’s opinion, the Armed Forces Survivor Benefit Plan is not life insurance, but a pension annuity which is, therefore, a collateral source under CPLR 4545. The survivor’s benefit, Mr. Riccardi testified, was in the form of an annuity, paying benefits over time and treated as income to the beneficiary. Mr. Riccardi also noted that based on his understanding of the plan, no actuarial determined premium was paid for this benefit but, rather, a set sum was deducted from decedent’s retirement pay. He felt that this benefit should be offset from the claimants’ awards for loss of support or inheritance because the court made reference to decedent’s income in arriving at those awards. Mr. Riccardi also testified that the Social Security *215 survivor benefits paid to Ryan were a collateral source offset for the loss of support portion of the damages award.
The payment to Brandon and Ryan Gardner from TIAA-CREF, Mr. Riccardi opined, was an offset to the court’s loss of inheritance awards. Mr. Riccardi testified that this was an annuity distribution of accumulated unpaid equity.
In opposition to defendant’s position, claimants argue that the prohibition in the statute creating the Survivor Benefit Plan provides that no annuity payable under the plan is subject to execution, levy, attachment, garnishment, or other legal process, thus, preventing a deduction as a collateral source under CPLR 4545 (c). Claimants also dispute that this benefit is a collateral source under the statute, arguing that the Survivor Benefit Plan was “like life insurance,” and that none of the sums received from any of these three sources corresponds to or duplicates any portion of the court’s damages award.
Legal Discussion
CPLR 4545 (c) provided at the time this action was commenced:
“Actions for personal injury, injury to property or wrongful death. In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance (except for life insurance), social security (except those benefits provided under title XVIII of the social security act), workers’ compensation or employee benefit programs (except such collateral sources entitled by law to liens against any recovery of the plaintiff). If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the *216 projected future cost to the plaintiff of maintaining such benefits. In order to find that any future cost or expense will, with reasonable certainty, be replaced or indemnified by the collateral source, the court must find that the plaintiff is legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement, subject only to the continued payment of a premium and such other financial obligations as may be required by such agreement.”[13]
A collateral source offset is statutorily required, except for those payments specifically excluded by the statute, if the court finds a past or future cost or expense was, or will, with reasonable certainty, be replaced or indemnified. The statute enacted, in derogation of the common law, must be applied in the narrowest sense keeping in mind the legislature’s purpose to eliminate double recoveries for the same injuries (Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81, 86-88 [1995]). The burden to establish the appropriateness of a collateral source offset falls upon the party seeking the relief, and requires a clear and convincing quantum of proof (Kihl v Pfeffer, 47 AD3d 154, 163-164 [2d Dept 2007]).
The parties do not dispute the amounts paid to the two distributees, and the issues here do not involve any future payments from potential collateral sources or the court’s award for future loss of support. The alleged collateral sources have already been paid. In looking back upon the benefits decedent’s children have received, the first question raised under the statute is whether these benefits are collateral sources subject to offset at all, or whether they fall within one of the excluded exceptions.
Initially, it must be noted that claimants, appropriately, do not assert that the TIAA-CREF retirement account distributions are an excluded collateral source, but rather that it is not duplicative of any portion of the award. The Social Security survivor benefits are also a collateral source, not excluded under the statute as the Court of Appeals held in Bryant v New York City Health & Hosps. Corp. (93 NY2d 592 [1999]). Accordingly, this decision will first address whether the payments received from the Survivor Benefit Plan as asserted by claimants are an excluded collateral source under CPLR 4545 (c).
*217 In order for these payments to be statutorily excluded from offset under the CPLR, they must fall into one of the statutory exceptions as life insurance, Social Security benefits under title XVIII of the Social Security Act, or a collateral source entitled to a lien against any recovery by claimants. In this case, claimants argue that the benefits are “like” life insurance, which is the only arguable exclusion of these payments as collateral sources.
Before the court addresses that issue, it must reject claimants’ position that because the federal statute creating the benefit precludes the annuity from being subject to assignment, execution, levy, attachment, garnishment, or other legal process, it cannot be used as a collateral source deduction (see 10 USC § 1450 [i]). Claimants misconstrue the effect of a collateral source deduction. The defendant does not seek to apply any legal process to the survivor benefit in contravention of the federal statute, rather, what is sought is an order affecting the amount of damages defendant must pay out on this court’s award. This setoff is authorized by CPLR 4545 (c), and is in no way prohibited by the federal statute.
Turning to defendant’s argument that this benefit is not life insurance but an annuity, defendant presented evidence that the Armed Forces Survivor Benefit Plan payments were not life insurance because: the payments were paid over time as opposed to a lump sum; IRS 1099-R forms were issued evidencing the payments were taxable; and the premiums decedent paid were not actuarially determined. These factors do not definitively establish whether these payments are or are not life insurance.
The Armed Forces Survivor Benefit Plan is a statutorily created plan which is actuarially determined. Title 10, section 1461, established the Department of Defense Military Retirement Fund used “to finance on an actuarially sound basis liabilities of the Department of Defense under military retirement and survivor benefit programs” (10 USC § 1461 [a]). Included in these programs are the retirement plan for decedent and the Survivor Benefit Plan (10 USC §§ 1461 [b]; 1447-1455). The amount decedent’s retirement pay was reduced for the child-only annuity under the Survivor Benefit Plan, was actuarially determined based upon the ages of decedent and his children as of his date of retirement (see 10 USC § 1452 [b] [1]; 32 CFR 48.401, 48.404).
Although generally, it is accurate that the amounts received as an annuity are included as gross income under the Internal *218 Revenue Code (26 USC § 72), and proceeds of a life insurance contract payable by reason of the insured’s death are not included in gross income (26 USC § 101 [a] [1]). Sometimes life insurance benefits—or at least a portion—can be taxable. A life insurance contract can be paid as an annuity with a portion of the benefits received attributable to contributions excluded from gross income, but the return on the investment is taxable as gross income (see 26 USC § 72 [a] [2]; [b]).
Yet, a closer look at the Survivor Benefit Plan and its purpose establishes that it is not life insurance. The Plan itself defines the benefit as an annuity (10 USC § 1447). Participation when there is a spouse or dependents is mandatory and the cost is shared by the retiree and the government (see 10 USC § 1448; exhibit A). Although it certainly has similarities to life insurance in that it provides a monetary benefit to the beneficiaries occasioned by the participant’s death, it does not involve the risk shifting and risk distributing that underlies the provision of insurance (see generally Helvering v Le Gierse, 312 US 531 [1941]; Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 364 [1994]). Moreover, in other contexts where Congress intended to provide life insurance, it explicitly used that term (see 5 USC § 8709; 38 USC § 1901; 50 USC Appendix § 541).
Since the legislature in CPLR 4545 (c) limited the exclusion only to “life insurance,” those payments or benefits that are “like” life insurance, as claimants argue, are not excluded. The Court of Appeals in Bryant specifically stated that payments received that are “in the nature of life insurance” or “analogous to life insurance benefits” are not excluded (Bryant, 93 NY2d at 608 [emphasis added]). Although prior to Bryant, other courts had denied collateral source offsets where the benefits received were similar to life insurance, those cases are no longer good law (see Krum v Green Is. Constr. Co., 249 AD2d 730 [3d Dept 1998]; Adamy v Ziriakus, 231 AD2d 80 [4th Dept 1997]). As a result, this court must find the payments received from the Survivor Benefit Plan are collateral sources.
This, however, does not end the inquiry because the fact that claimants have received a collateral source still does not entitle defendant to an offset under CPLR 4545. Defendant also bears the burden to show that these collateral sources have a “direct correspondence” with “the item of loss” (Oden, 87 NY2d at 87; Fisher v Qualico Contr. Corp., 98 NY2d 534 [2002]). The task of establishing the necessary correspondence between the essential *219 elements of the collateral source and the item of pecuniary loss to be replaced is “a matter of proof and factual analysis” (Oden, 87 NY2d at 89). Where defendant has failed to meet its burden, “the purposes of the statute would not be served by applying the mandatory offset” (id.). CPLR 4545 (c) serves only to eliminate windfalls and duplicative recoveries.
Defendant argues that the Survivor Benefit Plan payments decedent’s sons received should be offset against this court’s award for loss of support. The court made an award for the children’s loss of financial support as a result of decedent’s premature death. The basis for that award was decedent’s earnings. The description of the Survivor Benefit Plan in evidence reflects that it “helps make up for the loss of part of [the retiree’s] income.”[14] Since the benefit is intended to replace a portion of the decedent’s retired pay from the Air Force, it corresponds to this court’s loss of support award, and defendant is entitled to a deduction for these benefit payments. The amount of defendant’s reduction is also offset by the amount decedent paid for the benefit for the two-year period before his death, the sum of $586.56.
The monthly Social Security survivor benefits received on behalf of Ryan Gardner must also be deducted from the award for his past loss of support. In Bryant (93 NY2d at 607-608), the Court of Appeals found that Social Security survivor benefits were intended to replace a parent’s earnings and prevent economic hardship to those persons who are dependent on that parent’s earnings for support (see also Fisher, 98 NY2d at 538). The court’s award to each child for the loss of support corresponds to the purpose and intent of the Social Security survivor benefits payments to Ryan Gardner.
Defendant also asserts that the $255 lump-sum payment paid on behalf of Ryan Gardner as part of the Social Security survivor benefits must be an offset under the statute to the court’s award for funeral expenses.
Section 202 (i) of the Social Security Act (42 USC § 402 [i]), requires that a one-time lump-sum death benefit be paid in an amount equal to three times the deceased’s primary insurance amount or $255, whichever is less. The payment must be made to the widow or widower residing with the decedent, or if none exists, under certain circumstances, to a temporarily separated widow or widower, or alternatively, decedent’s children (42 USC § 402 [i]).
*220 This court found nothing that correlates this lump-sum award to the court’s award for funeral expenses. Although prior to 1981, if there was no spouse living with the decedent, as defined by the statute, this benefit could be paid to a funeral home or a person incurring the burial expenses, that is no longer the case (see former Social Security Act § 202 [i] [42 USC § 402 (i)], as amended by Pub L 97-35, tit XXII, § 2202 [a], 95 US Stat 357, 843; Colbert v Hobby, 130 F Supp 65, 66 [SD NY 1955]; 70B Am Jur 2d, Social Security and Medicare § 824).
The lump-sum death benefit is calculated based upon the decedent’s earnings up to the maximum award. Like the monthly survivor benefit, the payment is contingent upon establishing a dependency requirement, and is grounded in the same purpose as the monthly benefit. For these reasons, it correlates to the award for loss of support and must be an offset against the award to Ryan Gardner for his past loss of support.
The TIAA-CREF account distribution, defendant argues, should be offset against the court’s award to both children for their loss of inheritance. The loss of inheritance award was based upon the evidence that if decedent had lived his normal life expectancy, he would have accumulated greater wealth, and the children would have had a larger inheritance.
Undisputedly, both children received $12,997.27 from decedent’s combined TIAA traditional and TIAA-CREF variable accounts. Defendant, however, has failed to establish if any portion of these distributions were strictly a return of decedent’s premium payments or include a gain on the investment. Mr. Riccardi testified the payment reflected the amount “that had accumulated in the system,”[15] but denied that it was just a return of the money he paid into the account. The award for loss of inheritance compensated the boys for the loss of the increase to decedent’s savings and investment contributions over his life expectancy. The amount attributable to his premium payment is a return of income. Defendant has therefore failed to establish a direct correlation between these distributions and the loss of inheritance award or any other portion of the award (cf. Fisher v Mascardo, 94 AD3d 524 [1st Dept 2012] [defendant failed to match value of items lost with value of items awarded by jury with amount paid by insurance company]; Johnson v New York City Tr. Auth., 88 AD3d 321, 329 [1st Dept 2011] [defendant did not provide proof of specific *221 pension provisions on which it relied to support its burden to show the collateral source replaced the jury’s lost earnings award]).
Therefore, the court finds defendant is not entitled to an offset for the TIAA-CREF distributions.
Accordingly, based upon the foregoing, the court finds defendant is entitled to a collateral source offset as follows:
From the award of past loss of support for Ryan Gardner in the amended decision of this court, dated November 19, 2012, the sum of $222,368.97, representing payments he received of $180,638.97 from the Survivor Benefit Plan ($180,932.25 - $293.28[16]) and $41,730 ($41,475 + $255) from the Social Security Retirement, Survivors and Disability Insurance;
From the award of past loss of support for Brandon Gardner, the sum of $50,191.97 ($50,485.25 - $293.28[17]) for payments he received from the Survivor Benefit Plan.
This decision resolves the issue of collateral source payments, yet, another hearing is scheduled for February 13, 2014, to address issues involving CPLR article 50-B.

. Gardner v State of New York, Ct Cl, Nov. 19, 2012, Fitzpatrick, J., UID No. 2012-018-317 (exhibit 5).

. Exhibit 4.

. Exhibit 1.

. Exhibit 1.

. Exhibit F.

. Exhibit F.

. Exhibit A.

. Exhibit 2; exhibit A.

. Exhibit 5.

. Exhibit G.

. Exhibit B.

. CPLR 4545 was amended in 2009 (L 2009, ch 494, § 1, part F, §§ 2, 3), however reference to CPLR 4545 in this decision is to the former statute in effect as of the date this action was commenced, unless otherwise noted.

. The statute quoted was in effect as of the date this action was commenced, prior to the 2009 amendment (former CPLR 4545, as amended by L 2009, ch 494, § 1, part F, §§ 2, 3).

. Exhibit A, “Overview of the Survivor Benefit Plan” at 1.

. Tr at 32.

. There is one half of the premium decedent paid (total $586.56) for this benefit for the two years preceding the accident that caused his death.

. See n 1, above.