Fahey, J.
(dissenting). Plaintiff Yaniveth R. was born in January 1997. For the first year of her life she spent days with her grandmother in an apartment owned by defendant LTD Realty Co. She was there approximately 50 hours a week.
One year later, during a routine medical checkup she was diagnosed with an elevated blood lead level. It is alleged that *195 the exposure came from lead-based paint in the apartment. Beyond that it is alleged that as a result of this exposure Yani-veth suffers from brain damage and various cognitive deficits.
The local law at issue was designed to prevent and protect children from the injuries we see in this case.
Here, at issue is Administrative Code of the City of New York former § 27-2013 (h) (1) (as added by Local Law No. 1 [1982] of City of NY), which was enacted in 1982 and which required that
“[t]he owner of a multiple dwelling . . . remove or cover in a[n] [approved] manner . . . any paint or other similar surfacecoating material having a reading of 0.7 milligrams of lead per square centimeter or greater or containing more than 0.5 percent of metallic lead based on the non-volatile content of the paint or other similar surface-coating material on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age and under reside” (emphasis added).
Local Law 1 was eventually repealed and transferred to an article of title 27 of the Administrative Code containing lead poisoning prevention and control laws. Administrative Code § 27-2056.3 provides, in relevant part, that
“[t]he existence of a lead-based paint hazard in any multiple dwelling where a child of applicable age resides is hereby declared to constitute a condition dangerous to life and health. An owner shall take action to prevent the reasonably foreseeable occurrence of such a condition and shall expeditiously remediate such condition and any underlying defect . . . .” (Emphasis added.)
For its part, Administrative Code § 27-2056.5 (a) contains a presumption that, “[i]n any multiple dwelling erected prior to January 1, 1960, . . . the paint or other similar surface-coating material in any dwelling unit where a child of applicable age resides or in the common areas is lead-based paint” (emphasis added). Section 27-2056.18 of the Administrative Code, in turn, defines “ ‘applicable age’ ” as “ ‘under seven years of age’ for at least one calendar year from [Aug. 2, 2004].” However, neither in that section nor in the balance of the part of title 27 in *196 which the lead poisoning prevention and control laws appear is the term “resides” defined. Local Law 1, which the parties agree governs this case, similarly did not define the term “reside” as used therein, and the question of the meaning of that term is squarely before this Court on this appeal.
I agree with the majority that, “[generally, a landlord may be held liable for injury caused by a defective or dangerous condition upon the leased premises if the landlord is under a statutory or contractual duty to maintain the premises . . . .” (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 642 [1996]; see majority op at 191.) I also agree with the majority that Local Law 1 imposed such a duty inasmuch as it required landlords to “remove or cover” lead-based paint “in any . . . unit [of a multiple dwelling] in which a child or children six (6) years of age and under reside” (Local Law 1; see majority op at 191). I disagree with the majority, however, to the extent it concludes that the word “reside,” as used in Local Law 1, is to be narrowly interpreted so as to require that a person “liv[e] in a particular place with the intent to retain it as a residence” (majority op at 193) and, by extension, to remove Yaniveth from the coverage of that law. For that reason I respectfully dissent and would reverse the Appellate Division order, deny the motion for summary judgment in its entirety, and reinstate the complaint as against defendant LTD Realty Co.
“In [any] matter [ ] of statutory interpretation, our primary consideration is to discern and give effect to the [enactor’s] intention” (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]). “[W]e must look first to the statutory text, which is The clearest indicator of legislative intent’ ” (Matter of New York County Lawyers’ Assn. v Bloomberg, 19 NY3d 712, 721 [2012], rearg denied 20 NY3d 983 [2012], quoting Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). Our textual review must be conducted so as to give “the words employed” their “plain meaning” and “natural signification” (id. [internal quotation marks omitted]). Moreover, where, as here, there is no “controlling statutory definition, we . . . [may use] dictionary definitions as ‘useful guideposts’ in determining the meaning of a word or phrase” (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479-480 [2001], quoting Matter of Village of Chestnut Ridge v Howard, 92 NY2d 718, 723 [1999]).
At least one dictionary from the relevant time period defines “reside” as to “have a settled abode for a time: have one’s *197 residence or domicile” (Webster’s Third New International Dictionary, Unabridged 1931 [Merriam-Webster 1981]; see majority op at 192). That dictionary specifies that “reside” “may be the preferred term for expressing the idea that a person keeps or returns to a particular dwelling place as his [or her] fixed, settled, or legal abode” (Webster’s Third New International Dictionary, Unabridged 1931 [Merriam-Webster 1981]; see majority op at 192).
The same dictionary, however, acknowledges that “reside” had been defined as “to settle oneself or a thing in a place: be stationed: REMAIN, STAY,” and as “to have an abiding place” (Webster’s Third New International Dictionary, Unabridged 1931 [Merriam-Webster 1981]). Of course, a child may abide or be stationed in more than one place. Consequently, the foregoing definition leaves open the possibility that a child may have more than one place of residence, which is perfectly consistent with this Court’s conclusion in Matter of Newcomb that a person can have only one domicile, but may reside at more than one location (192 NY 238, 250 [1908] [“(A) person may have two places of residence . . . but only one domicile .... Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one’s domicile”]).
The intent of Local Law 1 is obvious: its enactors sought to shield young children, that is, those who cannot protect themselves, from the dangers of lead-based paint poisoning. The will of a legislative body is discernable from its diction (see Bryant v New York City Health & Hosps. Corp., 93 NY2d 592, 602 [1999]), and the use of the word “reside” in Local Law 1 signals a desire to protect young children who may be exposed to lead-based paint in more than one location. To conclude otherwise would be to say that a child — any person, in fact— may reside in only one place. The majority opinion eliminates the distinction between “residence” and “domicile” established in Newcomb (192 NY at 250). It effectively means that a child may have only one “residence.”
The impact of today’s decision transcends this case. It threatens the ability of those young children who are covered by Local Law 1 and who were subject to either a joint custody agreement or a comparable shared living arrangement at the time of their exposure to lead-based paint to recover damages for their resultant injuries. It threatens the ability of children who are covered by the successor to Local Law 1 (see Adminis *198 trative Code § 27-2056.1 et seq.) and who are subject to similar living arrangements to recover damages for the same harm. It also beseeches a legislative response.
Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein and Garcia concur; Judge Fahey dissents in an opinion.
Order affirmed, with costs.