[852 NYS2d 148]

JUSTIN FIRMES, Respondent, v CHASE MANHATTAN AUTOMOTIVE FINANCE CORP., et al., Appellants.

Second Department, January 22, 2008

## APPEARANCES OF COUNSEL

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP (Shaub, Ahmuty, Citrin & Spratt, LLP,* Lake Success *[Steven J. Ahmuty, Jr.,* and *Timothy R. Capowski]* of counsel), for Chase Manhattan Automotive Finance Corp., appellant.

*O'Connor, O'Connor, Hintz & Deveney, LLP,* Melville *(Robert E. O'Connor* and *Michael T. Reagan* of counsel), for Christopher Tietjen, appellant.

*Block & O'Toole (Pollack, Pollack, Isaac & De Cicco,* New York City *[Daniel P. O'Toole, Jeffrey A. Block* and *Brian J. Isaac]* of counsel), for respondent.

*Markowitz & Rabbach LLP,* Melville (*Scott Markowitz, Sherman Joyce* and *Shook, Hardy & Bacon LLP,* Washington, D.C. *[Victor E. Schwartz* and *Cary Silverman]* of counsel), for American Tort Reform Association, amicus curiae.

**OPINION OF THE COURT**

DILLON, J.

In *Kihl v Pfeffer* (47 AD3d 154 [2007]), this Court analyzed in detail the "reasonable certainty" evidentiary standard of CPLR 4545 (c) that governs collateral source hearings. In *Kihl,* we did not have an opportunity to address the circumstances under which defendants become entitled to posttrial collateral source hearings. Little has been written by the Appellate Divisions regarding the collateral source affirmative defense, discovery, the timing of hearing requests, and the nature of proof required upon motion for a hearing to be granted. The instant appeal presents us with such an occasion.

## I.

### Relevant Facts

This action arises out of a tragic accident involving the plaintiff, Justin Firmes, who was injured when the motorcycle he was operating collided with a pickup truck operated by the defendant Christopher Tietjen at the intersection of North Broadway and North Wisconsin Avenue in North Massapequa. The pickup truck was leased by Tietjen from the defendant Chase Manhattan Automotive Finance Corp. (hereinafter Chase).

The evidence adduced at the trial on the issue of liability established that Tietjen, whose travel was not controlled by any traffic control devices, was driving in the left northbound lane on North Broadway. Firmes, who was operating his motorcycle in the right southbound lane on North Broadway, testified that his view of oncoming traffic was obstructed by a truck in the left southbound lane waiting to make a left turn at the subject intersection. Tietjen testified that as he approached the subject intersection, he activated his left turn signal, "slowed down," and checked for oncoming traffic; however, his view was also obstructed by the truck. According to Tietjen, he saw Firmes'

motorcycle moments before the impact and applied his brakes in an attempt to avoid a collision. Nevertheless, Firmes collided with the pickup truck as Tietjen crossed the intersection. During the liability phase of the trial, the Supreme Court precluded Chase and Tietjen from introducing evidence that Firmes lacked a license to operate the motorcycle and was operating an unregistered and uninsured motorcycle. The jury found that the negligence of both the plaintiff and Tietjen were substantial factors in causing the accident, and apportioned 90% of fault to Tietjen and 10% of fault to the plaintiff.

During the trial on damages, evidence was presented regarding past pain and suffering spanning approximately two years between the accident and the trial. Firmes was conscious after the accident, remained at Nassau University Medical Center for 47 days, underwent a total of 11 surgeries including the amputation of the left leg below the knee, debridements to remove dead tissue, and the grafting of skin from his right leg, and experienced phantom pain. All five prosthetic devices fabricated for Firmes failed because of his weight, the existence of a bone spike at the stump, and the nondurability of the extensive skin grafting. Evidence of future pain and suffering included, beyond the amputated limb itself, stump pain, the inability to use a prosthesis, the inability to perform certain chores and work, and the need for continuing psychotherapy.

At the conclusion of Tietjen's counsel's summation on damages, Firmes' counsel sought to admit additional records from Nassau University Medical Center, on the ground that the certified records previously admitted "were not fully complete." The additional records apparently had been subpoenaed two days prior to the day of summations and certified that same day. Firmes' counsel explained that the additional records were supposed to be part of the originals, but for whatever reason, had not been included. Chase's counsel did not object to the admission of the additional records, subject to redaction. The trial court ruled that the additional records would be added to the exhibit in evidence subject to redaction. Tietjen's attorney took exception to the ruling, and reiterated the exception after the court's charge to the jury.

The jury awarded Firmes the sums of $400,000 for past medical expenses, $65,000 for past loss of earnings, $2,200,000 for approximately two years of past pain and suffering, $5,475,000 for future medical expenses, $660,000 for future loss of earnings over 33 years, and $5,200,000 for future pain and suffering

intended to compensate Firmes for 50.1 years of future life expectancy.

A potential collateral source setoff was among the myriad of issues litigated by the parties. Tietjen's answer, dated January 8, 2003, pleaded as an affirmative defense entitlement to a collateral source reduction in accordance with CPLR 4545. Chase, however, did not assert a collateral source affirmative defense in its answer dated January 31, 2003, and never amended its answer to include such an affirmative defense. Tietjen and Chase each served, at the same time as their answers, demands for collateral source information. Firmes' combined discovery responses, dated February 13, 2003, included a collateral source response that the plaintiff had received no collateral source payments as of that time. At his deposition conducted on June 30, 2003, Firmes testified that his initial application for Social Security disability benefits had been denied several months earlier, but that his counsel took over the process and had filed for a hearing that was not yet scheduled. At deposition, the defendants demanded production of Firmes' Social Security records. Firmes never updated his collateral source response, and the parties dispute whether Firmes ever provided Social Security authorizations. If authorizations were provided, they were transmitted to the defendants' attorneys on July 8, 2003, several days after Firmes' deposition.

After the verdict on damages was rendered, the defendants requested, and the court agreed, that all posttrial applications would be presented in written, as opposed to oral, motions. It was ultimately agreed that the posttrial motions would not become due until 30 days from the parties' receipt of the voluminous trial transcripts. As a result of transcription delays, the first posttrial motion was not served until February 15, 2005. By their separate posttrial motions, Chase and Tietjen moved pursuant to CPLR 4404 (a) to set aside, inter alia, the jury verdict on the issue of liability and for judgment as a matter of law or, in the alternative, to set aside the jury verdict as against the weight of the evidence and for a new trial on the issue of liability, to set aside the damages award as to past and future loss of earnings and past and future medical expenses as against the weight of the evidence and as excessive, and to set aside the damages award as to past and future pain and suffering as excessive. Specifically, they argued that the Supreme Court erred during the liability trial by, inter alia, precluding the introduction of evidence that on the date of the accident,

Firmes was not licensed to operate a motorcycle in the State of New York, and that the motorcycle itself was unregistered and uninsured. With respect to damages, the defendants argued, among other things, that the jury's awards were unsupported and/or excessive as to past and future loss of earnings, past and future pain and suffering, and past and future medical expenses. Chase and Tietjen also sought, in their separate posttrial motions, a hearing pursuant to CPLR 4545 to determine collateral source setoffs.

Firmes opposed the posttrial motions. On the issue of collateral source reductions, Firmes did not argue that he had not received, by that time, payments from collateral sources within the scope of CPLR 4545. Rather, Firmes argued that the defendants' requests for a collateral source hearing were untimely as the requests were not made orally immediately after the jury's verdict nor within 15 days thereof, as required for posttrial motions generally under CPLR article 44. In its reply on this issue, Chase argued that a collateral source hearing request was timely if asserted prior to the entry of the judgment, and that in any event, collateral source setoffs must be factored into any judgment subject to the mandatory structuring required by CPLR article 50-B (see CPLR 5041).

By order dated June 2, 2005, the Supreme Court denied those branches of the defendants' motions which were to set aside the jury verdict on the issue of liability as against the weight of the evidence and for a new trial on the issue of liability, holding, inter alia, that Firmes' lack of a valid motorcycle license related only to his authority to operate the vehicle and not to the manner of its operation, so that the exclusion of licensure evidence was proper. On damages, the Supreme Court concluded that the jury's awards for past and future pain and suffering did not materially deviate from what would constitute reasonable compensation for the injuries sustained, and likewise held that the jury's award for future loss of earnings conformed to the proof. The Supreme Court held that the jury's awards for past loss of earnings and past and future medical expenses did not conform to the proof, ordering a new trial as to those items of damages unless Firmes stipulated to reduced verdicts in the sums of $63,299 for past loss of earnings, $208,435 for past medical expenses, and $2,872,400 for future medical expenses.

In the same order, the Supreme Court denied the defendants' motions for a collateral source hearing on three specified grounds. First, as to Chase, a collateral source reduction was

not pleaded as an affirmative defense in its answer. Second, as to both defendants, the request for a collateral source hearing was found by the Supreme Court to be untimely, as a judgment already had been executed by that time. Third, the Supreme Court held that neither defendant met its burden of establishing that Firmes had actually received collateral source payments so as to warrant an entitlement to a hearing. The Supreme Court denied all other branches of the defendants' posttrial motions.

Chase and Tietjen separately moved, inter alia, pursuant to CPLR 2221 for leave to reargue, limited primarily to the issues of collateral source setoffs, and for posttrial collateral source discovery. Chase argued that the judgment the Supreme Court referenced as foreclosing collateral source reductions previously had been withdrawn upon stipulation of the parties executed December 22, 2004. Chase further argued that collateral source payments were specifically pleaded as an affirmative defense by Tietjen and were the subject of pretrial discovery, and that alternatively, Chase should be permitted to amend its answer to assert a defense under CPLR 4545 in the absence of surprise or prejudice to the other parties. Finally, Chase asserted that the defendants were not capable of establishing Firmes' receipt of collateral source payments as a result of Firmes' counsel's own failure to update the initial collateral source response as required by CPLR 3101 (h). Tietjen adopted Chase's collateral source arguments. In an order dated August 29, 2005, the Supreme Court, inter alia, granted those branches of the motions which were for leave to reargue and, upon reargument, adhered to its earlier collateral source determination that the request for a hearing was untimely, rendering other collateral source arguments academic.

For the reasons set forth below, we modify the judgment by reducing the awards for past and future pain and suffering and future medical expenses to the extent indicated, and by directing the conduct of a collateral source hearing and a determination by the Supreme Court regarding additional collateral source discovery.

## II.

### The Absence of a License, Registration, and Insurance

On appeal, Chase argues that contrary to the Supreme Court's finding, Firmes' operation of a motorcycle without a

license and without formal training constitutes a serious unlawful act, and that Firmes should therefore be precluded from recovering damages as a matter of public policy under the *Barker/Manning* rule (*see Manning v Brown*, 91 NY2d 116, 120-121 [1997]; *Barker v Kallash*, 63 NY2d 19, 24-26 [1984]). Alternatively, Chase and amicus curiae, the American Tort Reform Association, argue that the Supreme Court erred in excluding license, registration, and insurance evidence as relevant to Firmes' experience as a motorcycle rider and to comparative negligence.

The *Barker/Manning* rule precludes awarding relief to those plaintiffs who are injured in the course of knowingly and intentionally committing serious criminal acts (*see Manning v Brown*, 91 NY2d at 121-122 [plaintiff injured during illegal joyriding]; *Barker v Kallash*, 63 NY2d at 26, 29 [plaintiff injured while constructing pipe bomb]; *Moore v County of Suffolk*, 11 AD3d 591, 592 [2004] [plaintiff injured while resisting arrest]; *Mooney v Long Is. R.R.*, 305 AD2d 560 [2003] [infant plaintiff injured crossing train tracks while proceeding around safety gate in the down position]; *Gaither v City of New York*, 300 AD2d 255, 256 [2002] [plaintiff injured while engaged in illegal "elevator surfing"]; *Johnson v State of New York*, 253 AD2d 274, 278-279 [1999] [claimant's decedent killed as a result of escape from police custody]; *Matter of Graphic Arts Mut. Ins. Co. [Leno]*, 251 AD2d 981 [1998] [plaintiffs injured while engaged in crime of unauthorized use of a motor vehicle]; *Hyland v Calace*, 244 AD2d 318, 318-319 [1997] [decedent, while intoxicated, drove off highway]; *de Peña v New York City Tr. Auth.*, 236 AD2d 209, 210 [1997] [decedent walking in restricted subway tunnel]; *Phifer v State of New York*, 204 AD2d 612, 613 [1994] [decedent killed upon crashing stolen vehicle]; *La Page v Smith*, 166 AD2d 831, 833 [1990] [intoxicated decedent killed during 100 miles per hour car race]). The policy has its roots in the rule that one may not profit from one's own wrongdoing (*see Carr v Hoy*, 2 NY2d 185, 187 [1957]; *Riggs v Palmer*, 115 NY 506, 511 [1889]).

The *Barker/Manning* rule will not be applied, however, where the plaintiff's illegal conduct is not sufficiently "serious" as to warrant precluding recovery (*see Zannelli v Walker*, 27 AD3d 460, 461 [2006] [plaintiff passenger's alleged reckless conduct of grabbing steering wheel]; *Rokitka v Barrett*, 303 AD2d 983 [2003] [infant plaintiff's illegal possession of BB gun]; *Etu v Cumberland Farms*, 148 AD2d 821, 822 [1989] [infant impaired

by alcohol injured upon taking mother's car without permission]). Indeed, it has been held that a claimant's failure to have a valid license to operate a motor vehicle is not an illegal act that would bar recovery for damages in tort (*see Reed v City of Syracuse*, 309 AD2d 1195, 1196 [2003]) or the receipt of disability benefits under Workers' Compensation Law § 205 (3) (*see Matter of Anderson v Cohen Iron Works*, 45 AD2d 664, 665 [1974]).

Here, Firmes' operation of his motorcycle without a valid motorcycle license and registration were traffic infractions under Vehicle and Traffic Law § 509 (2) and § 410 (1) (*see* Vehicle and Traffic Law § 155; *People v Griffin*, 116 Misc 2d 751, 758 [1982]). On the date of the underlying accident, driving without insurance was also a traffic infraction (*see* Vehicle and Traffic Law § 319 [1]). We reject the argument that Firmes' conduct in operating his motorcycle without a valid license, registration, or insurance is sufficiently serious illegal activity to completely bar his recovery on public policy grounds (*see Manning v Brown*, 91 NY2d at 120-121; *Barker v Kallash*, 63 NY2d at 24-26; *Reed v City of Syracuse*, 309 AD2d at 1196; *Matter of Anderson v Cohen Iron Works*, 45 AD2d at 665).

The Supreme Court providently exercised its discretion in precluding Chase and Tietjen from introducing any evidence that the plaintiff lacked a license to operate the motorcycle, registration, and insurance (*see Miszko v Luma*, 284 AD2d 641 [2001]; *Almonte v Marsha Operating Corp.*, 265 AD2d 357 [1999]; *see also Dalal v City of New York*, 262 AD2d 596, 598 [1999]). The absence or possession of a driver's license relates only to the authority for operation, and not to the manner thereof (*see Almonte v Marsha Operating Corp.*, 265 AD2d 357 [1999], citing *Hanley v Albano*, 20 AD2d 644 [1964]; *see also Brown v Shyne*, 242 NY 176 [1926]; *Phass v MacClenathen*, 274 App Div 535, 536-538 [1948]), and the same reasoning applies to Firmes' failure to have proper registration and insurance.

## III.

### Supplemental Medical Records

The Supreme Court was vested with discretion to allow the plaintiff to introduce additional medical records after the close of proof, supplementing documents already in evidence (*see Feldsberg v Nitschke*, 49 NY2d 636, 643 [1980]; *Frazier v Campbell*, 246 AD2d 509, 510 [1998]), in the absence of prejudice to

other parties (*see Neff v Brassie*, 24 AD3d 1219 [2005]; *Morgan v Pascal*, 274 AD2d 561 [2000]; *Frazier v Campbell*, 246 AD2d at 510). This issue is not raised on appeal by Chase, which consented at trial to the admission of the additional records into evidence. In view of our resolution of other issues on appeal, *infra*, we do not believe any prejudice to Tietjen to be sufficient to warrant a new trial on this issue alone.

## IV.

### Past and Future Pain and Suffering

■ The amount of damages to be awarded to Firmes for his personal injuries is a question for the jury, and its determination will not be disturbed unless the awards deviate materially from what would be reasonable compensation (*see* CPLR 5501 [c]; *Taylor v Martorella*, 35 AD3d 722, 724 [2006]; *Wallace v Stonehenge Group, Ltd.*, 33 AD3d 789, 790 [2006]). Without minimizing the horrific experience Firmes endured, the severity of his injuries, and the nature of his medical treatments, in this case, the amount of damages awarded by the jury for past and future pain and suffering deviated materially from what would be reasonable compensation. We find that the sum of $1,500,000 represents reasonable compensation for Firmes' past pain and suffering and the sum of $3,500,000 represents reasonable compensation for future pain and suffering over 50.1 years of future life expectancy (*cf. Hotaling v CSX Transp.*, 5 AD3d 964, 970 [2004]; *Patterson v Nassau Community Coll.*, 308 AD2d 519 [2003]; *Kovit v Estate of Hallums*, 307 AD2d 336 [2003], *revd on other grounds* 4 NY3d 499 [2005]; *Miller v Long Is. R.R.*, 286 AD2d 713, 714 [2001]; *Walker v Zdanowitz*, 265 AD2d 404 [1999]; *Sanvenero v Cleary*, 225 AD2d 755, 756 [1996]).

## V.

### The Award for Future Medical Expenses

■ The jury awarded Firmes the sum of $5,475,000 for future medical expenses. The award was conditionally reduced to the sum of $2,872,400 in the Supreme Court's order dated June 2, 2005,[1] on the ground of excessiveness. Chase and Tietjen maintain that even after the Supreme Court's reduction, the award for future medical expenses is excessive and not supported by the evidence.

---

1. In the same order, the Supreme Court conditionally reduced Firmes' awards for past loss of earnings from the sum of $65,000 to the sum of $63,299,

For the Supreme Court to grant the defendants' motions to set aside the verdict pursuant to CPLR 4404 (a), the court must conclude that there is "simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see Roman v I. Gold Corp.*, 35 AD3d 833, 834 [2006]; *Robinson v City of New York*, 300 AD2d 384 [2002]).

On this record, there is clearly a view of the evidence that supports an award for future medical expenses. However, the award requires a reduction beyond that ordered by the Supreme Court. The testimonies of Firmes' physiatrist, Dr. Edwin Richter, and his economist, Ronald E. Mussin, were partially irrelevant as they related to costs associated with a future above-the-knee amputation that Dr. Richter conceded likely would not occur. The estimate regarding a below-the-knee prosthesis was based on an assumption that Firmes would use it on a daily basis, though Dr. Richter conceded that Firmes would primarily be confined to a wheelchair and any prosthesis would be, at best, cosmetic. Finally, while Firmes proffered testimony regarding the costs of a modified vehicle, ambulette services, and barrier-free housing, he failed to establish the necessity of such services by a preponderance of the credible evidence (*see Kavanaugh v Nussbaum*, 129 AD2d 559, 563 [1987]). Taking all of the foregoing factors into account, along with the decisions of this Court regarding reasonable compensation values for future medical expenses in similar cases (*e.g. Patterson v Nassau Community Coll.*, 308 AD2d 519 [2003]; *Miller v Long Is. R.R.*, 286 AD2d 713 [2001]), we find that a reasonable award supported by the trial evidence for this item of damages is the sum of $1,500,000.

## VI.

### Collateral Source Hearing

Prior to the amendment of CPLR 4010 (the predecessor to CPLR 4545) in 1975, New York followed the common-law rule that jury verdicts cannot be reduced by the amount of payments made to the plaintiff from collateral sources (*see Healy v Rennert*, 9 NY2d 202, 207-208 [1961]; *Lehr v City of New York*, 16 AD2d 702 [1962]). The common-law rule that defendants not

---

and for past medical expenses from the sum of $400,000 to the sum of $208,435; these awards are not further challenged by the defendants.

receive the benefit of the plaintiff's receipt of medical expense or wage reimbursements (see *Kish v Board of Educ. of City of N.Y.*, 76 NY2d 379, 384 [1990]) gave way to the need to address the "crisis" that had developed in the medical malpractice insurance industry (see *Oden v Chemung County Indus. Dev. Agency*, 87 NY2d 81, 85 [1995]; *Humbach v Goldstein*, 229 AD2d 64, 67-68 [1997]). Former CPLR 4010 (L 1975, ch 109) permitted juries in medical malpractice cases to consider collateral source payments when determining awards for economic loss (see *Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 85). Collateral source reductions became mandatory in medical malpractice actions in 1981, with a transfer that year of the responsibility for calculating collateral source setoffs from the jury to the court (L 1981, ch 269). The common-law rule against collateral source setoffs was diluted further in 1984, when CPLR 4010 was repealed altogether and replaced by CPLR 4545 (a), which extended the statutory reductions to all past work-related personal injury and wrongful death awards against public employers (L 1984, ch 701). The common-law rule was abrogated almost entirely in 1985 and 1986, when further amendments to CPLR 4545 extended collateral source reductions to all past and future awards in medical malpractice, dental malpractice, personal injury, and wrongful death actions where there is evidence that medical expenses, lost wages, or other economic loss have been or will be paid with "reasonable certainty" (see L 1985, ch 294, § 8; L 1986, ch 220, § 36).

In their current forms, CPLR 4545 (a) applies to actions involving medical, dental, and podiatric malpractice, CPLR 4545 (b) applies to actions against public employers for personal injury and wrongful death, and CPLR 4545 (c) broadly applies the collateral source rule to "any [other] action" for personal injury, property damage, and wrongful death. Substantively, subdivisions (a), (b), and (c) are similar in many ways but are, in certain respects, also distinct and unique, particularly subdivision (b).[2] The distinctions between subdivisions (a), (b), and (c) appear to reflect the piecemeal fashion in which the

---

2. Subdivision (b), dealing with actions against public employers, does not extend, as do the other subdivisions, to future economic losses (see *Iazzetti v City of New York*, 94 NY2d 183 [1999]; *Ryan v City of New York*, 79 NY2d 792, 794 [1991]), and makes no reference to the reasonable certainty standard of proof. Unlike subdivisions (a) and (c), subdivision (b) limits offsets only to reimbursements paid for in whole or in part by the public employer, and also fails to add back to the plaintiff's damages the cost of premiums paid toward maintaining the benefit (see *Iazzetti v City of New York*, 94 NY2d at 188).

statute was amended in 1981, 1984, 1985, and 1986, that incrementally expanded its scope based on the nature of the litigation and the items of economic damages awarded.[3] The result of the statute's evolution has been to control insurance costs by preventing, where applicable, the receipt of double recoveries by plaintiffs for economic loss (*see Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592, 607 [1999]; *Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 88; *Ryan v City of New York*, 79 NY2d 792, 795 [1991]; *Humbach v Goldstein*, 229 AD2d at 67-68; Mem of Assembly Rules Comm, 1984 NY Legis Ann, at 251-252). However, the statute is not applicable to actions that settle before trial (*see Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 522-523 [1996]).

The Supreme Court's order dated June 2, 2005, inter alia, denying those branches of the defendants' initial posttrial motions which were for a collateral source hearing, was superseded by the order dated August 29, 2005, made upon reargument. The order of August 29, 2005, upon reargument, denied the defendants a collateral source hearing, on the sole ground that a judgment already had been executed by the Supreme Court, rendering the issue of collateral source setoffs untimely.

■ We disagree with the Supreme Court's analysis regarding the effect of the judgment that had been filed by Firmes' counsel. All parties had agreed with the court at the conclusion of the trial that posttrial motions would be submitted in writing after receipt of the trial transcripts. By February 16, 2005, Chase and Tietjen each had served their respective posttrial motions, including their requests for a collateral source hearing. The judgment referred to in the order dated August 29, 2005, appears to have been executed by the court on March 4, 2005, and was not entered with the Clerk of the Court until March 25, 2005, all of which occurred after the defendants' collateral source motions were already pending.[4] Indeed, notwithstanding negotiations between the parties and the court over judgment issues related to CPLR article 50-B, Chase and Tietjen both argued in their initial posttrial motions that no judgment be entered, as any such judgment would be premature absent reso-

Thus, it cannot be said that the common-law rule against collateral source reductions has been completely abrogated.

3. Differences in the subdivisions have been held to have been intended by the Legislature (*see Ryan v City of New York*, 79 NY2d at 794).

4. The March 2005 judgment is not to be confused with the earlier judgment dated November 23, 2004, which had been withdrawn upon stipulation of the parties.

lution of posttrial damages issues, including those requiring the conduct of a collateral source hearing.

The Supreme Court should not have executed the judgment on March 4, 2005, because collateral source offsets are to be made to personal injury, property damage, and wrongful death awards before calculating a structured judgment as required here by CPLR article 50-B (*see* CPLR 5041 [a]; *Bryant v New York City Health & Hosps. Corp.*, 93 NY2d at 608; *Sternfeld v Forcier*, 248 AD2d 14, 19 [1998]; *Bermeo v Atakent*, 241 AD2d 235, 236 [1998]). The defendants could not have "waived" their claim to collateral source setoffs in the face of judgment-related discussions with Firmes' counsel or the court, as the respective motions of Chase and Tietjen for, inter alia, a collateral source hearing, prior to the entry of the judgment of March 4, 2005, demonstrate otherwise. The defendants' posttrial motions for a collateral source hearing were timely. CPLR 4545 does not impose any time frame within which defendants must request a posttrial hearing. It has been held that an application for a collateral source hearing may be timely made any time before the judgment is entered (*see Wooten v State of New York*, 302 AD2d 70, 72 [2002]), unless the court directs otherwise (*see Virkler v Shockney*, 178 AD2d 966 [1991]). While an untimely request for a collateral source hearing constitutes a waiver of the right to the statutory setoff (*see Boone v Hopkins*, 298 AD2d 866, 867 [2002]; *Ventriglio v Active Airport Serv.*, 257 AD2d 657 [1999]), the defendants' hearing requests were formally made by motions that were served prior to the execution of the judgment on March 4, 2005, and its entry on March 25, 2005, and therefore, should have been entertained on the merits.[5] In any event, in this instance, the parties had agreed, with the consent of the court, that posttrial motions would not be due until 30 days from the parties' receipt of the trial transcripts.

It appears that Firmes' efforts to enter a judgment may have been undertaken, at least in part, to circumvent potential collateral source setoffs. An initial judgment dated November 23, 2004, was entered without notice, and after vociferous objection

---

**5.** We disagree with the conclusion in *Bongiovanni v Staten Is. Med. Group* (188 Misc 2d 362 [2001]), as relied upon by Firmes, that posttrial motions for collateral source hearings must be made within 15 days of the jury's verdict, as otherwise required by CPLR 4405. CPLR 4405 imposes a 15-day deadline upon posttrial motions "under this article," meaning CPLR article 44. CPLR 4545 is not contained within CPLR article 44, and hence, is not governed by the 15-day deadline applicable to other posttrial motions (*see Wooten v State of New York*, 302 AD2d at 72-73).

by the defendants, was withdrawn by stipulation dated December 22, 2004. Firmes attempted to negotiate, and ultimately submitted for execution and entry, another judgment in March of 2005, while issues of potential collateral source setoffs were still extant, and hence, the mandatory structure of the jury's award under CPLR article 50-B was also extant (*see Bermeo v Atakent*, 241 AD2d at 236). Firmes never denied in his posttrial submissions the receipt of collateral source payments, but argued against the conduct of an offset hearing only upon procedural grounds, such as untimeliness and the defendants' alleged judgment-related waiver of collateral source remedies. Under the peculiar circumstances of this case, the Supreme Court should have exercised its discretion in granting that branch of Chase's motion which was for leave to plead the affirmative defense (*see* CPLR 3025 [b]; *Wooten v State of New York*, 302 AD2d at 74-75 [permitting posttrial amendment of defendant's answer to include affirmative defense of CPLR 4545 absent prejudice or surprise to the claimant]).

█ The defendant bears the burden at the hearing of proving entitlement to a collateral source setoff (*see Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 89; *Kihl v Pfeffer*, 47 AD3d 154 [2007]; *Kastick v U-Haul Co. of W. Mich.*, 292 AD2d 797, 798 [2002]; *Young v Knickerbocker Arena*, 281 AD2d 761, 764 [2001]; *Faas v State of New York*, 249 AD2d 731, 733 [1998]; *Adamy v Ziriakus*, 231 AD2d 80, 86 [1997]). The standard of proof that must be applied is that of "reasonable certainty" (CPLR 4545 [c]), which is more than a preponderance of the evidence but less than proof beyond a reasonable doubt, and which has been interpreted by this Court as meaning clear and convincing evidence that the result is "highly probable" (*see Kihl v Pfeffer*, 47 AD3d 154 [2007]; *Quezada v O'Reilly-Green*, 24 AD3d 744, 746 [2005]). The same interpretation of "reasonable certainty" has been adopted by the First Department (*see Ruby v Budget Rent A Car Corp.*, 23 AD3d 257, 258 [2005]), Third Department (*see Young v Knickerbocker Arena*, 281 AD2d 761, 764 [2001]; *Sternfeld v Forcier*, 248 AD2d 14, 16 [1998]), and Fourth Department (*see Caruso v LeFrois Bldrs.*, 217 AD2d 256, 258-259 [1995]). In its initial posttrial order dated June 2, 2005, denying the defendants' request for a collateral source hearing, the Supreme Court found, inter alia, that the defendants failed to meet their burden of showing that any collateral source benefits had been received. In so holding, the Supreme Court looked only at the past tense, and ignored the equation of

CPLR 4545 (c) that also applies the statute to costs or expenses that will, in the future tense, be replaced or indemnified from collateral sources. Thus, a defendant's failure to proffer proof that collateral source benefits already have been paid does not necessarily foreclose the party's right to a hearing on collateral source offsets.

While it is axiomatic that the defendants' burden of proof at collateral source hearings is that of "reasonable certainty" under CPLR 4545 (c), decisional authorities are less clear as to the burden that defendants must meet when seeking the conduct of a collateral source hearing. Firmes maintains that the burden on such a motion is that of clear and convincing evidence. We suspect that the paucity of case law on this point is due to the fact that, as in the vast majority of actions, plaintiffs simply disclose the receipt of collateral source payments in their discovery responses, and the only remaining issue for the parties and the courts is the mathematical computation of offsets that correspond to the items of damages awarded (*e.g. Bryant v New York City Health & Hosps. Corp.*, 93 NY2d at 607). Sparse case law exists on what is required by the moving parties for entitlement to a collateral source hearing.

Specifically, the Appellate Division, First Department, appears to require that defendants meet the "reasonable certainty" standard in their motions seeking a collateral source hearing (*see Williams v Turner Constr.*, 2 AD3d 217, 217-218 [2003]). This Court, in affirming the Supreme Court's denial of a collateral source hearing, noted that the defendants' motion for a hearing was not supported by "any competent evidence" that past economic loss should be reduced (*see Rosenblyum v Liberty Sorting*, 261 AD2d 466, 466 [1999]). However, in *Rosenblyum,* this Court did not reach the issue of the specific showing that is required to entitle parties to a collateral source hearing. In our view, the "reasonable certainty" language of CPLR 4545 (c) applies to the collateral source hearing itself where "evidence shall be admissible for consideration by the court" and whereupon a "finding" is made reducing the jury's award by the amount of collateral source payments with an add-back for the cost of certain premiums paid by the plaintiff to maintain benefits (*see* CPLR 4545 [c]). CPLR 4545 (c), which, being in derogation of the common law, must be strictly construed (*see Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 86; *Kihl v Pfeffer*, 47 AD3d 154 [2007]; *Young v Tops Mkts.*, 283 AD2d 923, 926 [2001]; McKinney's Cons Laws of NY, Book 1,

Statutes § 301 [a]), contains no language applying the reasonable certainty standard to motions that merely seek the conduct of a collateral source hearing. Clearly, defendants' applications for collateral source hearings should be governed by a showing that is less than the ultimate hearing burden. We therefore consider the nature of proof required of defendants to entitle them to posttrial collateral source hearings.

There are varied areas of jurisprudence where the motion burden is typically and necessarily less than the evidentiary hearing burden. For instance, pretrial motions to suppress evidence in criminal cases are granted under CPL 710.60 (4) if the defendant merely submits sworn allegations of fact on a material point which must be resolved before the court can decide the legal suppression issue (*see People v Burton*, 6 NY3d 584, 587 [2006]). Similarly, probable cause hearings are required where the defendant merely denies participation in the alleged criminal transaction or suggests other grounds for suppression (*see People v Mendoza*, 82 NY2d 415, 428-429 [1993]; *People v Rivera*, 42 AD3d 160 [2007]).

Pretrial discovery is available so defendants can acquire information and documents that may later be used to support a motion for a collateral source hearing (*see Scalone v Phelps Mem. Hosp. Ctr.*, 184 AD2d 65, 75 [1992]; *Fleming v Bernauer*, 138 Misc 2d 267, 269 [1987]). The most common discovery mechanism, of course, is the demand for collateral source information (*see Jacobs v Levy*, 154 AD2d 654 [1989]), served by many defense practitioners with their clients' answers. Noncompliance with a CPLR 4545 demand subjects recalcitrant plaintiffs to the enforcement remedies of CPLR 3124 and 3126. Moreover, plaintiffs are under a continuing obligation to promptly amend or supplement a collateral source response if an initial response is incorrect or incomplete, or if correct and complete when initially made, circumstances are such that the failure to amend or supplement would render the initial response misleading (*see* CPLR 3101 [h]; *Dehaney v New York City Tr. Auth.*, 180 Misc 2d 695, 698-699 [1997]).

A second available discovery mechanism, which was employed during the litigation of the instant action, is the use of pretrial depositions to elicit from plaintiffs collateral source information within the purview of CPLR 4545 (*see Greenspan v East Nassau Med. Group*, 204 AD2d 273, 274 [1994]).

A third discovery device, also pursued by the defendants, is a demand pursuant to CPLR 3101 and 3120 for a copy of records,

or authorizations therefor, maintained by collateral source providers (*see Eaton v Chahal*, 146 Misc 2d 977, 984 [1990]) such as no-fault insurance files, workers' compensation files, and Social Security disability records.

A fourth device that could be utilized in the context of collateral source discovery is the notice to admit under CPLR 3123 (a) (*see generally Meadowbrook-Richman, Inc. v Cicchiello*, 273 AD2d 6 [2000]; Dillon, *The CPLR's Most Dangerous Discovery Statute,* NYLJ, Mar. 28, 2003, at 4, col 4; *see also* Barshay and Gottlieb, *Use of Notice to Admit in No-Fault Insurance Litigation,* NYLJ, Aug. 6, 2007, at 4, col 4). Admittedly, notices to admit cannot be used to determine ultimate disputed issues regarding collateral source payments such as their precise amounts and their correspondence to the items of damages for which statutory compensation is sought (*see generally Hawthorne Group v RRE Ventures*, 7 AD3d 320, 324 [2004]; *National Union Fire Ins. Co. of Pittsburgh, Pa. v Allen*, 232 AD2d 80, 85 [1997]; *Kimmel v Paul, Weiss, Rifkind, Wharton & Garrison*, 214 AD2d 453 [1995]). We perceive, however, no reason why such notices, timely served not less than 20 days prior to trial (*see* CPLR 3123 [a]), could not be used to obtain information for which there can be no legitimate dispute that the plaintiff has received collateral source reimbursement of an unspecified sum toward all or some of the medical expenses, rehabilitation expenses, lost earnings, or other claimed economic loss. A response to a notice to admit, or the plaintiff's failure to respond, which is deemed an admission (*see* CPLR 3123 [a], [b]), could provide an evidentiary basis for a defendant's subsequent motion for a collateral source hearing.

If all pretrial discovery efforts prove futile, it is conceivable that medical or employment records, properly subpoenaed to the courthouse for trial, could also provide evidentiary support for a posttrial collateral source motion (*cf. Berhe v New York City Tr. Auth.*, 6 Misc 3d 1036[A], 2005 NY Slip Op 50309[U] [2005]). Testimony of a witness at a nonjury trial could accomplish the same purpose (*see Bongiovanni v Staten Is. Med. Group*, 188 Misc 2d at 366).

We hold that for a defendant to be entitled to a collateral source hearing, the defendant must tender some competent evidence from available sources that the plaintiff's economic losses may in the past have been, or may in the future be, replaced, or the plaintiff indemnified, from collateral sources (*accord Rosenblyum v Liberty Sorting*, 261 AD2d at 466). We reject Firmes'

appellate argument that the defendants' posttrial collateral source motions were subject to the higher "clear and convincing evidence" standard to warrant the conduct of a collateral source hearing.

Here, the plaintiff testified at his deposition on June 30, 2003, that his attorney had filed for a Social Security disability benefits hearing, but that a hearing had not yet been scheduled. Firmes never denied in his various posttrial submissions in 2005 that collateral source benefits had been paid. Such silence was made all the more curious by the failure of his counsel to update the initial collateral source disclosure if the circumstances so required (*see* CPLR 3101 [h]), and by counsel's aggressive efforts to enter two separate judgments before any posttrial damages issues were resolved by the court. Under the peculiar circumstances of this case, we find that the Supreme Court erred in failing to order a collateral source hearing.

Firmes' obligation to amend or supplement his initial collateral source response remains extant, if circumstances so require (*see* CPLR 3101 [h]). We leave to the Supreme Court the remedy to be imposed, if any, for any noncompliance with CPLR 4545 (c) and 3101 (h) that has prolonged the parties' posttrial motions and the entry of a final, amended judgment.

## VII.

### Posttrial Collateral Source Discovery

Chase and Tietjen sought, in their motions for leave to reargue, inter alia, an order pursuant to CPLR 3101 (h) and 3126 requiring Firmes to provide collateral source authorizations, or alternatively, an order striking claims for past and future earnings. The request is reiterated on appeal, as the Supreme Court, in effect, denied the application as academic.

As a general rule, discovery of collateral source issues is to be conducted prior to the filing of a note of issue, and posttrial discovery is disallowed (*see Bongiovanni v Staten Is. Med. Group*, 188 Misc 2d at 366; *Hoffmann v S.J. Hawk, Inc.*, 177 Misc 2d 305, 308-309 [1998]). However, a court may, in the exercise of its discretion, permit posttrial collateral source discovery if the defendant can demonstrate prejudice not of its own making, such as where benefits became payable after the filing of a note

of issue (*see Hoffmann v S.J. Hawk, Inc.*, 177 Misc 2d at 308-309).[6]

We remit the matter to the Supreme Court to preliminarily determine whether Firmes received any pretrial CPLR 4545 benefits such as Social Security disability payments, and failed to amend his collateral source disclosure as required by CPLR 3101 (h), in which case the request by Chase and Tietjen for authorizations should be granted.

The parties' remaining contentions either are without merit, have been rendered academic by our determination, or are not properly before us.

Therefore, the judgment is modified, on the law, the facts, and in the exercise of discretion, by deleting the provisions thereof awarding damages in the principal sums of $2,200,000 for past pain and suffering, $5,200,000 for future pain and suffering, and $2,872,400 for future medical expenses; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, those branches of the defendants' motions which were to set aside the damages awards with respect to damages for past and future pain and suffering as excessive are granted, and those branches of the defendants' motions which were to set aside the damages award with respect to damages for future medical expenses as against the weight of the evidence are granted in their entirety, that branch of the motion of the defendant Chase which was for leave to amend the answer to include the affirmative defense of collateral source offset is granted, and a new trial with respect to the awards for past and future pain and suffering and future medical expenses is granted unless within 30 days after service upon the plaintiff of a copy of this opinion and order, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Nassau County, a written stipulation consenting to reduce the verdict as to damages for past pain and suffering from the sum of $2,200,000 to the sum of $1,500,000, and for future pain and suffering from the sum of $5,200,000 to the sum of $3,500,000, and to further reduce the damages for future medical expenses from the sum of $2,872,400 to the sum of $1,500,000, and to the entry of an amended judgment accord-

6. Any Social Security Administration authorization that Firmes' counsel appears to have provided by letter dated July 8, 2003, is of no practical benefit to the defendants if Social Security disability benefits were triggered at a later time.

ingly, and the matter is remitted to the Supreme Court, Nassau County, for a collateral source hearing pursuant to CPLR 4545 (c) as to past and future economic loss, to be held after the filing of such stipulation or after the conduct of a new trial and a new determination of those branches of the defendants' motions which were for collateral source discovery; in the event the plaintiff so stipulates, then the judgment, as so further reduced and amended, and as further reduced by any collateral source offsets to which the defendants may be entitled pursuant to CPLR 4545 (c), is affirmed insofar as appealed from, without costs or disbursements.

CRANE, J.P., RITTER and CARNI, JJ., concur.

Ordered that the judgment is modified, on the law, the facts, and in the exercise of discretion, by deleting the provisions thereof awarding damages in the principal sums of $2,200,000 for past pain and suffering, $5,200,000 for future pain and suffering, and $2,872,400 for future medical expenses; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, those branches of the defendants' motions which were to set aside the damages awards with respect to damages for past and future pain and suffering as excessive are granted, and those branches of the defendants' motions which were to set aside the damages award with respect to damages for future medical expenses as against the weight of the evidence are granted in their entirety, that branch of the motion of the defendant Chase which was for leave to amend the answer to include the affirmative defense of collateral source offset is granted, and a new trial with respect to the awards for past and future pain and suffering and future medical expenses is granted unless within 30 days after service upon the plaintiff of a copy of this opinion and order, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Nassau County, a written stipulation consenting to reduce the verdict as to damages for past pain and suffering from the sum of $2,200,000 to the sum of $1,500,000, and for future pain and suffering from the sum of $5,200,000 to the sum of $3,500,000, and to further reduce the damages for future medical expenses from the sum of $2,872,400 to the sum of $1,500,000, and to the entry of an amended judgment accordingly, and the matter is remitted to the Supreme Court, Nassau County, for a collateral source hearing pursuant to CPLR

4545 (c) as to past and future economic loss, to be held after the filing of such stipulation or after the conduct of a new trial and a new determination of those branches of the defendants' motions which were for collateral source discovery; in the event the plaintiff so stipulates, then the judgment, as so further reduced and amended, and as further reduced by any collateral source offsets to which the defendants may be entitled pursuant to CPLR 4545 (c), is affirmed insofar as appealed from, without costs or disbursements.