■ JOHN RANIOLA, Bronx Public Administrator of the Estate of OSVALDO QUINONES, Deceased, Respondent, v MONTEFIORE MEDICAL CENTER, Appellant, et al., Defendants. [926 NYS2d 468]—

Order, Supreme Court, Bronx County (Geoffrey D. Wright, J.), entered August 21, 2009, which denied defendant Montefiore Medical Center's motion for judgment notwithstanding the verdict and granted the alternative relief of setting aside the jury verdict awarding plaintiff $3 million for four years of past pain and suffering, unless the parties, within 30 days, filed a stipulation settling the case for $750,000, modified, on the facts, to direct a new trial on the issue of damages for past pain and suffering, unless plaintiff stipulates, within 30 days of service of a copy of this order with notice of entry, to an award of $500,000

and to entry of a judgment in accordance therewith, and otherwise affirmed, without costs.

In late October 1998, plaintiff's decedent underwent surgery at Montefiore to amputate his right leg below the knee, a procedure necessitated by his diabetes. Some eight hours after the procedure, for which he had been given local anesthesia and sedatives, the decedent fell from his hospital bed and fractured his left hip. In deposition testimony read to the jury, the decedent's wife, who visited him in the hospital in the days following the fall, testified that the decedent did not remember how he fell. Notwithstanding this testimony and the decedent's initial deposition testimony that he did not know how the fall occurred and that "maybe" a nurse had failed to raise a side rail of the bed, the jury's finding that Montefiore negligently caused the decedent's injury was supported by sufficient evidence (*see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). Nor can we conclude that the verdict was against the weight of the evidence (*see McDermott v Coffee Beanery, Ltd.*, 9 AD3d 195, 206 [2004]). Given the testimony of the decedent's expert, the jury could reasonably have rejected the testimony of the attending nurse and found that she failed to raise the guard rails flanking the bed when she left the room to change the decedent's bedpan, in violation of hospital protocol, and that the decedent fell to the floor as he attempted to reach the call button. The decedent's hip was surgically repaired with internal screws, which later caused what the decedent characterized as severe pain whenever he attempted to walk using a prosthetic limb.

The decedent, who was 63 years old at the time of the fall, also suffered from chronic kidney failure, which was treated with dialysis, and heart disease. Before his fall from the hospital bed, in two earlier surgical procedures also necessitated by his diabetes, the decedent's right big toe and half of his right foot were amputated. In December 2001, the decedent's left leg was amputated because of his diabetes. The next year, four years after the fall, the decedent died of a heart attack.

The damages in question were awarded for the decedent's past pain and suffering during the four years between his hospital accident and his death. There is no indication in the record that the parties ever stipulated to reduce the jury's award to $750,000, as called for by the trial judge. In the absence of such a stipulation, we have the authority to review and determine whether the award deviates materially from what would be reasonable compensation (CPLR 5501 [c]). The trial judge's finding that the award should be reduced was appropriate (*see Kahl v MHZ Operating Corp.*, 270 AD2d 623 [2000]),

but, in our view, the reduced award still deviates materially from the reasonable standard to the extent indicated (*see Caldas v City of New York*, 284 AD2d 192 [2001] [as reflected in the record, award of $375,000 for past pain and suffering over six years for two hip fractures]). Concur—McGuire, Freedman and Abdus-Salaam, JJ.

Mazzarelli, J.P., and Saxe, J., dissent in a memorandum by Saxe, J. as follows: Eight hours after plaintiff's 63-year-old decedent, Osvaldo Quinones, had his right leg amputated below the knee, he fell out of his hospital bed, fracturing his hip. The jury's finding of liability against defendant hospital was based on the failure of a nurse to raise the bed's side rail after removing a bedpan, leaving Quinones unprotected from the fall, which occurred when he tried to push himself up in the bed so that he could reach the call button. The hip fracture required the internal fixation of screws, which caused the decedent severe pain whenever he attempted to walk with the use of a prosthetic leg, discouraging him from walking and causing him to use a wheelchair instead.

This panel is unanimous in finding that the liability verdict was supported by sufficient evidence as well as the weight of the evidence. We differ only on the issue of reasonable compensation for the injury. The jury awarded $3 million for the decedent's pain and suffering during the four years between his accident and his death. The trial court granted defendant's motion to set aside the verdict to the extent of finding the award excessive, and found the sum of $750,000 to be more appropriate.

This Court has the authority to review and determine whether a damages award deviates materially from what would be reasonable compensation (CPLR 5501 [c]). In my view, the trial judge's assessment of the reasonable compensation for the injury in this case was appropriate, and since it does not deviate materially from what would be reasonable compensation, it does not warrant further reduction.

It is true that the pain and suffering of the amputation itself are not properly part of the injury for which plaintiff is entitled to damages (*see e.g. Knight v Loubeau*, 309 AD2d 579, 580 [2003]). However, it is likewise true that the pain and suffering experienced by plaintiff's decedent was not merely the physical distress arising directly from the hip fracture. Another aspect of Quinones's pain and suffering was that which resulted from his inability to use a prosthesis as had been expected, because the hip fracture caused such a degree of pain when he attempted to walk that he had to rely instead on a wheelchair to get around

(*see Firmes v Chase Manhattan Auto. Fin. Corp.*, 50 AD3d 18, 29 [2008], *lv denied* 11 NY3d 705 [2008]). Contrary to defendant's contention, there was sufficient evidence to establish that Quinones's hip fracture led to his inability to walk and his reliance on a wheelchair, and prevented him from performing ordinary activities of daily life that he previously could perform. Indeed, while Quinones testified at his deposition that he could no longer work in the yard or play with his children, the testimony of his wife indicated that when he returned home after the accident, and for the remaining years of his life, he needed her to help him with even basic tasks, such as toileting, bathing and getting into bed.

It should be noted that, contrary to defendant's contention, even if some of Quinones's pain and suffering was attributable to his underlying medical conditions, specifically, heart disease, hypertension, kidney disease, and diabetes, no reduction in his pain and suffering award is warranted. On the contrary, to the extent those preexisting conditions caused Quinones additional difficulties and complications in the repair and healing of his hip fracture, that additional impact constitutes a component of his compensable pain and suffering.

In locating comparable cases for purposes of assessing the reasonableness of the award (*see Kahl v MHZ Operating Corp.*, 270 AD2d 623, 624 [2000]), we may find that cases in which the plaintiffs suffered hip fractures are not truly comparable. A useful point of comparison will be found only where a plaintiff's hip fracture caused pain severe enough to prevent the plaintiff from walking and force him to rely on a wheelchair instead.

To illustrate: A case bearing a marked resemblance to the present matter is *Lukas v Trump* (281 AD2d 400 [2001]), in which the Second Department upheld an award of $600,000 for past pain and suffering (for an unstated number of years) and $700,000 for future pain and suffering in favor of a 60-year-old man with polio who used crutches and leg braces, who, after suffering a fractured hip, was unable to resume using crutches, and became confined to a wheelchair. In contrast, in *Caldas v City of New York* (284 AD2d 192 [2001]), in which this Court upheld an award of $375,000 for past pain and suffering (as reflected in the record on appeal), where the plaintiff suffered two displaced hip fractures, although the plaintiff was permanently disabled from doing manual labor and unable to perform household repairs as he had before, he was not disabled from performing the ordinary functions of daily life.

In *Clotter v New York City Tr. Auth.* (68 AD3d 518 [2009]), in which the 46-year-old plaintiff was left unable to walk without

crutches or a cane, due to a ruptured quadriceps tendon and an avulsion fracture, this Court reduced the award for past pain and suffering from $1.2 million to $800,000. The fact that the plaintiff in *Clotter* was a formerly healthy 46-year-old prevents us from reasonably comparing her future pain and suffering to that of Quinones, had he lived. However, the past pain and suffering resulting from the need for previously unnecessary surgery, followed by substantial disability in daily activities, makes her award for *past* pain and suffering relevant for comparison here.

While it is difficult to equate one person's pain and suffering with that of another, with the foregoing cases in mind, the trial court's reduced award for past pain and suffering cannot be said to deviate *materially* from what would be reasonable compensation, and, accordingly, I would affirm.